# MANSFIELD v. EXCELSIOR REFINING COMPANY.

## ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 239. Argued and submitted March 28, 1890.—Decided May 5, 1890.

In Illinois, the unsuccessful party in an action of ejectment is entitled, by statute, upon the payment of all costs, to have the judgment vacated and a new trial granted, but no more than two new trials can be granted to the same party under the statute. This statute governs the trial of actions of ejectment in the courts of the United States sitting in Illinois.

In an action of ejectment, in Illinois, where the title of one of the parties depends upon a deed made by a trustee, invested with the legal title, and with power to sell and convey to the purchaser upon advertisement and sale, it is not material to inquire — the deed from the trustee not appearing upon its face to be void — whether the trustee conformed to all the terms of his advertisement for sale.

By the statute of Illinois, all deeds, mortgages, and other instruments of writing, authorized to be recorded, take effect and are in force from and after the time of filing the same for record, and not before, as to creditors and purchasers without notice; and all such deeds and title papers must be adjudged void as to such creditors and subsequent purchasers, until the same be filed for record. *Held*, That although a grantee in a quitclaim deed is a purchaser within the meaning of the statute, and the prior recording of such a deed will give it a preference over one previously executed but not recorded until after the quitclaim deed, yet the grantee in the latter deed is charged with notice of what may be done under a trust deed conveying the same lands, filed for record before the quitclaim deed, and his rights are, therefore, subject to those of the grantee in a deed from the trustee, not filed for record until after the quitclaim was recorded. Whatever is sufficient notice to put a purchaser of land on inquiry is sufficient notice of an unrecorded deed.

Where distillery premises, in the occupancy of a distiller, who is operating the same under a lease to expire at a specified time, are seized and sold by a collector of internal revenue for taxes due from the distiller to the government, a sale of such premises, by the collector, by the summary mode of notice and publication provided in Section 3196 of the Revised Statutes, for the taxes so due, will pass to the purchaser only the interest of the delinquent distiller, and will not affect the interest in the premises, either of the owner of the fee or of a third person having a lien thereon, even where the government holds a waiver, executed by the owner of the fee or by such third person having a lien, consenting that the distillery premises may be used by the distiller for distilling spirits

subject to the provisions of law, and expressly stipulating that the lien of the United States for taxes shall have priority of any and all interest and claims which the waiver may have to the distillery and premises.

In the case of such a waiver, the interest of the owner of the fee or the liens on the premises held by other persons, cannot be affected except by a suit in equity to which they are parties, as provided in Section 3207 of the Revised Statutes.

EJECTMENT. Judgment for defendant. Plaintiff sued out this writ of error. The case is stated in the opinion.

*Mr. Henry B. Mason,* for plaintiff in error, submitted on his brief.

*Mr. W. E. Blake* for defendant in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

This is an action in the nature of ejectment. It was brought by the plaintiff in error, December 24, 1879, to recover from the defendant in error the possession of a tract of land in Henderson County, Illinois, containing ten acres more or less, and upon which was a distillery. The plea was, not guilty of unlawfully withholding the premises described in the declaration. There were three trials of the case, each time by the court, pursuant to a written stipulation of the parties waiving a jury. Upon the first trial there was a judgment for the defendant. At the instance of the plaintiff a new trial was granted in conformity with a statute of Illinois, which provides that at any time within one year after a judgment, either upon default or verdict in an action of ejectment, the party against whom it is rendered, his heirs or assigns, shall be entitled, upon the payment of all costs, to have the judgment vacated and a new trial granted; no more, however, than two new trials to be granted to the same party under the statute. Rev. Stats. Ill. 1845, p. 208, § 30; 1874, p. 447, § 35; 1 Starr & Curtis' Anno. Stat. 989. The first new trial under this statute is the right of the unsuccessful party, and is not dependent upon the discretion of the court. *Vance* v. *Schuyler,* 1 Gilman, 160; *Riggs* v. *Savage,* 4 Gil-

man, 129; *Emmons* v. *Bishop*, 14 Illinois, 152; *Chamberlin* v. *McCarty*, 63 Illinois, 262; *Lowe* v. *Foulke*, 103 Illinois, 58. These statutory provisions govern the trials of actions of ejectment in the courts of the United States sitting in Illinois. *Equator Company* v. *Hall*, 106 U. S. 86. At the second trial there was a judgment for the plaintiff. The defendant then took a new trial under the statute, and when the case was last tried the court ruled that, upon all the evidence, the law did not authorize a recovery by the plaintiff, and gave judgment for the defendant. The present writ of error brings up that judgment for review.

The parties entered into a written stipulation as to the principal facts. The main question in the case arises out of a sale by a collector of internal revenue of the premises in dispute, including the distillery thereon, for taxes due from the distiller.

The facts, so far as it is necessary to state them, may be thus summarized:

On the 20th of September, 1873, the Bank of Chicago was the owner in fee of the premises. It executed to the United States, April 22, 1874, in conformity with the statute of the United States, what is called a waiver, which recited that George E. Hinds intended to carry on the business of distilling and manufacturing high wines in the distillery on these premises, and contained the following provisions: "And whereas the undersigned, the Bank of Chicago, a corporation organized and existing under the laws of the State of Illinois, of the county of Cook and the State of Illinois, has an interest in the title of said lot of land and distillery and appurtenances: Therefore, in order to enable the said George E. Hinds to carry on said business on said lot of land in said distillery, and to comply with the requirements of the eighth section of the act of Congress, approved July 20th, A.D. 1868, and in consideration thereof, the said bank does hereby express and give its consent that said distillery and premises may be used by said Hinds for the purpose of distilling spirits, subject to the provisions of law; and the said bank does hereby expressly stipulate that the lien of the United States for taxes

and penalties shall have priority of any and all its interest
and claims to said distillery and premises, and that in case of
the forfeiture of the distillery premises or any part thereof
the title of the same shall vest in the United States, dis-
charged from any such claim or interest which the said bank
has or may have in and to the same, and with the express
understanding that this waiver shall take effect and be in
force on and after this date." This document was recorded the
day succeeding its execution, in the office of the recorder of
the county where the land lies.

The bank, on the 10th of July, 1874, executed to Isaac P.
Coates a deed or instrument, which was duly recorded on the
30th of March, 1875, conveying various parcels or tracts of
land, including the one in controversy, in trust to dispose of the
same at public or private sale, and apply the proceeds to the
payment of its debts and liabilities. Coates executed, May 3,
1875, under section 3262 of the Revised Statutes, a waiver simi-
lar to the one above referred to, and which by its terms was
to take effect May 10, 1875. This was also placed on record.
By quitclaim deed executed on the same day — May 3, 1875
— Coates, as assignee, conveyed the premises in dispute to
Elisha H. Turner, of Burlington, Iowa. The consideration re-
cited was $8500, paid by the grantee. This deed was recorded
May 6, 1875, together with the waiver that Coates had exe-
cuted. Turner, also, on the same day, executed and placed
upon record a similar waiver to the United States.

On May 6, 1875, Turner conveyed the premises to George F.
Westover, of Chicago, in trust, to secure the payment of three
promissory notes given by Turner for the price of the premises,
all dated May 6, 1875, and payable to the order of Isaac P.
Coates, assignee; one for $1500 due July 1, 1875; one for
$3000 due May 1, 1876; and one for $3000 due May 1, 1877;
each note drawing interest at the rate of eight per cent per
annum until due, and ten per cent after maturity. This deed
provided, among other things, for a sale by the trustee upon
default by Turner in the payment of the notes or any part
thereof, or of the interest accruing thereon, and for a convey-
ance to the purchaser. It gave the trustee power to adjourn

the sale from time to time, at discretion, and constituted him attorney for the grantor to execute and deliver deeds to the purchaser or purchasers; applying the proceeds to the payment of the notes and for other purposes specified, and reconveying to the grantor, after the objects of the trust were accomplished, such part of the premises as remained unsold. This deed was recorded the day of its execution, and at the same time with the deed from Coates to Turner.

In conformity with the terms of the trust deed, Westover, on the 1st day of September, 1876, advertised the premises to be sold, at public vendue, on the 7th day of October, 1876, to the highest bidder for cash, together with all the right, title, benefit and equity of redemption therein of Turner, his heirs and assigns. The advertisement stated that the sale was because of default in the payment of the first two above-described notes of Turner to Coates, and of the interest due thereon, and because of the application by the legal holders of the notes to the trustee to sell and dispose of the premises under the authority conferred by the trust deed. A sale was made by the trustee on the day and at the place named in the notice.

By quitclaim deed, dated October 9, 1876, and duly acknowledged the next day, Westover conveyed the premises to Coates, as purchaser at the trustee's sale. The deed described the default, on account of which the sale was made, as having occurred "in the payment of the second of said notes, and the interest on the second and third notes," and stated that the premises were sold, under the advertisement, on the day and year and at the place mentioned, and that Coates became the purchaser. This deed was duly acknowledged on the 10th day of October, 1876, but was not filed for record and recorded until December 22, 1879. By quitclaim deed, dated December 18, 1879, acknowledged the succeeding day; and filed for record December 22, 1879, Coates and wife conveyed the premises to the plaintiff, Howard Mansfield.

The stipulation between the parties states that "December 16, 1876, the said real estate in controversy was seized, and afterwards a sale made by the United States collector of internal revenue for the 4th district of Illinois, for the non-pay-

ment of taxes and assessment of internal revenue against George E. Hinds, a distiller operating under a lease expiring May 1, 1877, the distillery on the said property in controversy, sufficient goods, chattels or other effects to satisfy such taxes and assessments not having been found by said collector;" also, "that George F. Westover and Isaac P. Coates received no notice of such seizure and sale, (prior to said sale,) and only knew of such seizure and sale by reports long after such seizure and sale occurred." The collector's advertisement was on December 21, 1876, and was for the sale, on the 10th of January, 1877, of "the property generally known as the Sagetown or Turner distillery, lately operated by George E. Hinds, consisting of 10 acres, more or less, with the distillery buildings thereon," etc. The report of that sale shows that Albert W. Parsons, of Burlington, Iowa, became the purchaser of the property sold by the collector, at the price of $2240, the amount of the assessments, liabilities and costs claimed by the government. The property not having been redeemed within the time prescribed by the laws of Illinois; and T. W. Barhydt, trustee for the Merchants' National Bank of Burlington, Iowa, having become the owner, by assignment, of the certificate of purchase given to Parsons, the collector, November 4, 1878, made a deed to Barhydt, trustee, conveying all the right, title and interest of the United States. That deed was acknowledged November 14, 1878, and recorded December 22, 1879. The defendant claims title under the collector's sale and deed. It also claims under a quitclaim deed executed to it by Elisha H. Turner and wife, of date May 14, 1878, which was acknowledged on that day, and filed for record October 28, 1878. This last deed purported to have been given "for the consideration of good and valuable considerations hereby acknowledged, and one dollar," and to "convey and quitclaim" Turner's interest in the premises.

Our attention will be first directed to certain objections urged by the defendant to the plaintiff's title. Its contention is that the power conferred upon Westover by the trust deed of May 6, 1875, was not so executed as to pass the title to Coates, the purchaser at the trustee's sale of October 7, 1876.

This objection is based upon two grounds, the first of which is that the trustee's advertisement stated that the sale was by reason of the default in the payment of the first two promissory notes given by Turner to Coates, and of the interest due on those notes, whereas the deed from Westover to Coates recites that the default was in respect to the second note, and the interest on the second and third notes. The second ground is, that the trust deed authorized the trustee, upon default in the payment of the notes or of any part thereof, or of the interest accuring thereon, and after advertisement, to sell the premises and all the right and equity of redemption of the grantor "at public vendue, to the highest bidder for cash, at the premises or at the front door of the court-house," in the county where the premises were, "at the time appointed in said advertisement, or may adjourn the sale from time to time, at discretion;" and that while the advertisement fixed the hour of 11 o'clock of the forenoon of October 7, 1876, as the time of the sale, the deed to Coates, although reciting that the sale occurred "upon the day and year and at the place" mentioned in the advertisement, was silent as to the hour of the day on which the sale took place. These objections — if, under any circumstances, available to Turner or to those claiming under him — are of no consequence in this action involving simply the legal title to the premises. The trustee had power to sell upon notice, and to convey the legal title to the purchaser. He did sell upon notice which described the nature of the default upon the part of Turner that made a sale necessary. While the deed does not accurately state the particulars of such default, it does recite a sale pursuant to the notice, and makes that notice a part of the deed. Neither this error in its mere recitals, nor its silence as to the precise hour of the day when the sale occurred, made the deed void upon its face, or ineffectual as a conveyance of the legal title by a trustee invested with power to sell upon notice, and to convey the title to the purchaser. *Kœster* v. *Burke*, 81 Illinois, 436, 439; *Graham* v. *Anderson*, 42 Illinois, 514, 517.

Another contention of the defendant is, that, independently of any right acquired under the collector's sale and convey-

ance, its title, as derived from Turner's quitclaim deed of May 14, 1878, filed for record October 28, 1878, must prevail in this action against the plaintiff's title, derived from the deed of Westover to Coates, not filed for record until December 22, 1879. This contention is based upon that provision of the statute of Illinois which declares that "all deeds, mortgages and other instruments of writing which are authorized to be recorded, shall take effect and be in force from and after the time of filing the same for record, and not before, as to all creditors and subsequent purchasers without notice; and all such deeds and title papers shall be adjudged void as to all creditors and subsequent purchasers without notice, until the same shall be filed of record." Rev. Stats. Ill. 1845, p. 108, § 23; 1874, p. 278, c. 30, § 30; 1 Starr & Curtis, p. 591, § 31. The defendant claims to be a subsequent purchaser from Turner without notice of the prior sale and conveyance by Westover to Coates. It relies upon those cases in the Supreme Court of Illinois which hold that "a deed of release and quitclaim is as effectual for the purpose of transferring title to land as a deed of bargain and sale; and the prior recording of such deed will give it a preference over one previously executed, but which was subsequently recorded. In this respect there is no distinction between different forms of conveyance. As a general rule, the one first recorded must prevail over one of older execution, when made in good faith, and when it appears to have been the intention of the parties to convey again the *same* lands which had previously been conveyed." *McConnel* v. *Reed*, 4 Scammon, 117. See also *Kennedy* v. *Northup*, 15 Illinois, 148, 154; *Holbrook* v. *Dickenson*, 56 Illinois, 497; *Harpham* v. *Little*, 59 Illinois, 509. So in *Brown* v. *Banner Coal & Coal Oil Company*, 97 Illinois, 214, 219: "The land being within the description, the grantees under this quitclaim deed are purchasers; and nothing indicating bad faith or notice of the former sale, the unrecorded deed, as against them, was inoperative until recorded, and not being recorded until after the record of the deed of release, by the *very words* of our statute, cannot prevail."

We do not perceive that these cases sustain the position of

the defendant. Turner did not have the legal title to the premises at any time after the execution of his deed to West-over. The legal title was in Westover from the date of Tur-ner's conveyance to him, May 6, 1875, until the former's deed to Coates of the 9th of October, 1876. Granting that the defendant, when it received the quitclaim deed of 1878, was a purchaser, — although it does not appear affirmatively that it paid anything of value to Turner, — it was not, within the meaning of the statute, a purchaser without notice ; for it was informed by the record of deeds that the legal title was in Westover in trust to secure the notes held by Coates, and that Turner's interest in the property, after the execution of that deed, arose out of the clause requiring the trustee, after the objects of the trust were attained, to reconvey to him such of the premises as remained unsold. Turner's deed to the de-fendant, as we have seen, only purported to pass his interest in the premises. The defendant did not acquire by that deed the legal title; for the legal title had long before that been conveyed to Westover. In Illinois an unrecorded deed will pass the title, except as to creditors and subsequent purchasers without notice. But as the deed of trust to Westover was recorded before Turner's conveyance to the defendant, the latter took with notice of what might be done under the trust deed. *Snapp* v. *Peirce*, 24 Illinois, 156, 157. In *Farrar* v. *Payne*, 73 Illinois, 82, 88, in which the title of one of the par-ties arose out of a sale under an attachment levied on the in-terest of the grantor in certain real estate, covered by a trust deed, after that deed was recorded, — the deed to the pur-chaser at the sale under the attachment being filed for record before the deed to the purchaser at the trustee's sale, — the court said: " The trust deed had been recorded previous to the attachment, and that was enough. The published notice of the sale was all the required notice of any proceeding under the trust deed. The recording of the trust deed gave notice of its existence to subsequent claimants of the equity of re-demption, and pointed out the source of information of what might be done in pursuance of the deed, and they were bound to take notice of the proceedings thereunder. The title of

Cranston [the purchaser at the trustee's sale] related back to the execution of the deed of trust. The subsequent proceedings under the deed of trust were connected with and in aid of the title conveyed by that deed." This language was cited with approval in *Heaton* v. *Prather*, 84 Illinois, 330, 333, the court adding: "It was also held in *Rupert* v. *Mark*, 15 Illinois, 540, and *Hankinson* v. *Barbour*, 29 Illinois, 80, that whatever is sufficient to put a purchaser of land on inquiry is sufficient notice of an unrecorded deed." It results that, as between Westover, Coates and Turner, the legal title passed to Coates before the execution of Turner's quitclaim deed; and that title, being of record when this action was brought, relates back to the date of the trust deed to Westover, and was not affected by the intermediate deed made by Turner to the defendant.

This disposes of all the questions arising out of the plaintiff's chain of title that we deem important to notice.

We come now to the examination of the question relating to the seizure, sale and conveyance by the collector of internal revenue. We have seen that such seizure occurred on the the 16th day of December, 1876, previous to which time there had been placed upon record a deed by Turner, conveying the premises to Westover in trust to secure the payment of three notes, aggregating $7500, given by Turner to Coates for the price of the property, two of which notes were past due when the collector made his seizure; and previous to which time, also, the legal title had been, by deed duly acknowledged, conveyed to Coates as the purchaser at the sale made by the trustee. This deed to Coates not having been recorded at the time of the seizure and sale by the collector, what interest in the premises passed by the collector's sale and deed? If, as contended, the collector's sale and deed passed, and, under the statute, could have passed, nothing more than the distiller's interest in the premises, — which was a leasehold interest ceasing May 1, 1877, — then the court below erred in not rendering judgment for the plaintiff, as the holder of the legal title. This question depends upon the meaning to be given to numerous sections of the Revised Statutes to be found in Title 35, "Internal Revenue."

Those statutory provisions must be considered as a whole in order that the purpose of Congress in enacting them may be understood. The material ones are as follows : If any person "liable to tax" fails to pay the taxes assessed against him within the time prescribed, the collector may "make distraint therefor as provided by law." § 3185. The tax so due from any person "liable to pay" it, together with the interest, penalties and costs that may accrue in addition thereto, is a lien in favor of the government upon all property and rights of property "belonging to such person." § 3186. The goods, chattels and effects, including stocks, securities and evidences of debt "of the person delinquent as aforesaid," may be distrained and sold for such taxes in the manner provided. § 3187. The collector's certificate of the sale of such personal property, securities, and evidences of debt transfers to the purchaser all right, title and interest therein "of such delinquent." § 3194. In case of the insufficiency of such goods, chattels or effects of the delinquent, to satisfy the taxes due from him, the collector may seize and sell real estate. § 3196. Besides making publication in a newspaper of the county, and posting at the nearest post-office, notice of sale, in the case of the seizure of real estate by the collector, must be given by the officer to the person "whose estate it is proposed to sell," by giving "him in hand, or leaving at his last or usual place of abode, if he has any such within the collection district where said estate is situated, a notice, in writing, stating what particular estate is to be sold, describing the same with reasonable certainty, and the time when and the place where said officer proposes to sell the same." § 3197. When real estate is sold by the collector, he must give to the purchaser a certificate of purchase describing the real estate purchased, for whose taxes it was sold, the name of the purchaser, and the price paid for the property, which shall be followed by a deed to the purchaser if the property is not redeemed in due time. § 3198. Such deed shall be *prima facie* evidence of the facts therein stated, and, if the proceedings of the officer, as set forth, have been substantially in accordance with the provisions of law, shall be considered and operate as a conveyance

of all the right, title and interest "the party delinquent" had in and to the real estate thus sold at the time the lien of the United States attached thereto. § 3199. When the property, real and personal, so seized and sold, is insufficient to satisfy the claim of the government, other property liable to seizure, "of the person against whom such claim exists," may be seized and sold, until the amount due "from him," together with all expenses, is fully paid. § 3205. When real estate is seized for taxes, the Commissioner of Internal Revenue may direct the institution of a suit in chancery, in a District or Circuit Court of the United States, to enforce the lien of the United States for tax upon any real estate, or to subject any real estate owned "by the delinquent," or in which "he" has any right, title or interest to the payment of such tax; to which suit all persons having liens upon, or claiming any interest in, the real estate sought to be subjected as aforesaid "shall be made parties," and "be brought into court as provided in other suits in chancery; and in which suit the court shall adjudicate all matters involved therein, and finally determine "the merits of all claims to and liens upon the real estate in question, and, in all cases where a claim or interest of the United States therein is established, shall decree a sale of such real estate, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States." § 3207. Every proprietor or possessor of, and every person interested in the use of any still, distillery, or distilling apparatus, are jointly and severally liable for the taxes imposed by law on the distilled spirits produced therefrom, and the tax shall be a first lien on the spirits distilled, the distillery used for distilling the same, the stills, vessels, fixtures and tools therein, "the lot or tract of land whereon the said distillery is situated, and on any building thereon, from the time said spirits are in existence as such until the said tax is paid." § 3251. If the distiller "defrauds or attempts to defraud the United States of the tax on the spirits distilled by him, or any part thereof," he shall "forfeit the distillery and distilling apparatus used by him, and all distilled spirits and all raw

materials for the production of distilled spirits found in the distillery and on the distillery premises," and shall be fined not less than $500 nor more than $5000, and be imprisoned not less than six months nor more than three years. § 3257. The bond of the distiller shall not be approved "unless he is the owner in fee, unencumbered by any mortgage, judgment or other lien of the lot or tract of land on which the distillery is situated, or unless he files with the collector, in connection with his notice, the written consent of the owner of the fee, and of any mortgagee, judgment creditor or other person having a lien thereon, duly acknowledged, that the premises may be used for the purpose of distilling spirits, subject to the provisions of law, and expressly stipulating that the lien of the United States for taxes and penalties shall have priority of such mortgage, judgment or other incumbrance, and that in case of the forfeiture of the distillery premises, or of any part thereof, the title of the same shall vest in the United States, discharged from such mortgage, judgment or other incumbrance." § 3262.

What effect did the above waivers in favor of the United States have upon the title to the tract of land on which the distillery stood? That is the vital question in this case. The contention of the defendant is, that those waivers entitled the government, when enforcing its claim for taxes, to treat the premises just as if they were owned by the delinquent distiller. This view is based upon that part of § 3262 requiring the waiver to show the consent of the owner of the fee, or of the mortgagee judgment creditor or other person having a lien thereon, that the premises be used for the purpose of distilling spirits, "subject to the provisions of law." But this does not mean that an interest in the premises passes by the waiver to the distiller, even for a time. It is true that the person executing the waiver, whether he owns the fee or holds simply a lien upon the premises, consents that the taxes accruing to the government shall be a first lien on the distillery and on the lot or tract of land on which it stands. This construction is supported by the requirement that the waiver shall expressly stipulate that the lien of the United States for

taxes and penalties shall have *priority* of any mortgage, judgment or other incumbrance held by the person giving the waiver. In other words, if the person executing the waiver owns the fee, the government, with his consent, is to have a first lien on the distillery premises; if he holds an incumbrance simply, then the lien of the United States is to have priority over that incumbrance. But in neither case, does the distiller acquire an interest in the premises; in neither, does the government acquire anything more than a first or prior lien.

But in what mode may the government enforce its prior lien? In order to collect the taxes due from Hinds, the distiller, it might have instituted a suit in equity, to which not only the distiller, who had simply a leasehold interest, but all persons having liens upon, or claiming any interest in, the premises could be made parties; in which suit, it would have been the duty of the court to determine finally the merits of all claims to and liens upon the property, and to order a sale distributing the proceeds among the parties according to their respective interests. Of course, the United States having, by stipulation, priority of lien, would have been first paid out of the proceeds. But no such course was pursued. The officers of the government preferred to adopt the summary method of sale by the collector upon notice and publication, as provided for in § 3197. It may be conceded that if the distiller had been the owner of the fee, a sale in that mode would have passed *his* interest subject to the rights of any prior incumbrancer, and subject to the right of any subsequent incumbrancer to redeem the premises. But the delinquent distiller had no interest except a leasehold interest, and that expired, as we have seen, on the 1st of May, 1877. We are of opinion that the collector's sale in the summary mode prescribed in § 3197 passed, and under the statute could have passed, nothing more than the interest of the delinquent distiller. When the collector distrains and sells personal property for taxes, his certificate, by the express words of the statute, (§ 3194,) transfers to the purchaser the right, title and interest of the *delinquent* in the property sold. When he

sells real estate for taxes; the statute, in terms equally explicit, (§ 3199,) declares that his certificate of purchase shall be considered and operate as a conveyance of the right, title and interest the *party delinquent* had in the real estate so sold. Now, if Congress intended to invest the collector with authority to sell, by the summary process of notice and publication, the interest of any other person than the delinquent distiller, the statute would have described a certificate that would pass the interest of such person in the property sold. The provision that the certificate of purchase shall pass the interest of the delinquent in the property sold by the collector excludes, by necessary implication, the interest of any other person. This is made clear by the fact that the statute, in the case of a sale by the collector, requires notice to "the person whose estate it is proposed to sell," (§ 3197,) which person is, of course, the one who is delinquent in the matter of taxes. Any other construction would impute to Congress the purpose, in order that the taxes against the delinquent distiller, having only a leasehold interest, might be collected, to seize and sell the interest of the owner of the fee, and to destroy the lien of an incumbrancer, without giving either an opportunity to be heard.

It is said that, under this interpretation of the statute, the execution of the waiver was a useless requirement, since, without such waiver, the government had the right to sell the leasehold interest of the tenant distiller. This view is more plausible than sound. By the waiver the government acquired one thing it would not have had without it; namely, a lien upon the premises prior to that held by Coates as security for the notes specified in the deed of trust to Westover. And it acquired the right, by a suit in equity, to have sold, under the decree of a court, not only the distiller's leasehold interest, but the fee in the premises, and to have obtained priority in the distribution of the proceeds over the person giving the waiver, whatever his interest might have been. It is of no consequence that the collector's notice of sale did not specify the leasehold interest as the thing he proposed to sell. His authority to sell, upon notice and publication, was given by

the statute, and was fettered by the condition that he could give a certificate of purchase passing the interest of the delinquent. He had no authority, in that summary mode, to sell and convey the interest of one who was not a delinquent. His deed — if construed as conveying anything more than the interest of the government — shows upon its face, in connection with the statute, that he attempted to convey what he had no power to convey, the fee in the premises. As a conveyance of such fee, it was a nullity. The government neglected to pursue the only mode by which the fee could be sold; namely, a suit in equity, in which all persons interested in the property could have been made parties. When the distiller was in default in respect to taxes, it was for the proper officers of the government to elect whether they would seek satisfaction of its demands by means of a seizure and sale by the collector of the distiller's interest only, or by a suit to which all persons having claims upon the premises on which the government had a lien should be made parties. They chose to adopt the former method, under which only the interest of the delinquent distiller could be seized and sold. That interest being only a leasehold interest, the purchaser at the collector's sale acquired nothing more.

Some stress is laid upon the fact that the property was not redeemed from the collector's sale within the time prescribed by the laws of Illinois. It is sufficient to say that no redemption was necessary. All that the purchaser got was the leasehold interest of the distiller, and that, it is agreed, ceased in May, 1877.

It is proper to say that the proceedings for the sale of these premises were not taken under any provision of the statute relating to the title vesting in the United States in case of the forfeiture of the distillery premises. A forfeiture could not have occurred unless the distiller defrauded, or attempted to defraud, the government of the taxes due from him. Sec. 3257; *United States* v. *Stowell,* 133 U. S. 1. It is admitted that there was no ground for forfeiture by reason of the non-payment of the taxes due from the distiller Hinds.

Upon the whole case we are of opinion that the legal title of the plaintiff must prevail in this action.

*The judgment is reversed and the cause remanded with directions to enter judgment for the plaintiff.*