**UNITED STATES of America,**
**Appellant,**

v.

**NATIONAL BANK OF COMMERCE,**
**Appellee.**

No. 83–1218.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 15, 1983.

Decided Jan. 31, 1984.

Rehearing and Rehearing En Banc
Denied April 30, 1984.

Terry F. Wynne, Bridges, Young, Matthews, Holmes & Drake, Pine Bluff, Ark., for appellee.

Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, William S. Estabrook, John A. Dudeck, Jr., Attys., Tax Div., Dept. of Justice, Washington, D.C., for appellant; George W. Proctor, U.S. Atty., Little Rock, Ark., of counsel.

Before BRIGHT, ARNOLD and FAGG, Circuit Judges.

ARNOLD, Circuit Judge.

The United States claims that one Roy J. Reeves has not paid all of his income tax for the year 1977. There are two bank accounts in the National Bank of Commerce of Pine Bluff, Arkansas, in the names of "Roy Reeves or Ruby Reeves or Neva R. Reeves." The government served a notice of levy on the bank, demanding that enough of the accounts to satisfy the taxpayer's obligation be paid over to it. The bank, protesting that it did not know how much of the account belonged to Roy, as opposed to Ruby or Neva, refused. The government then brought this action under Section 6332(c)(1) of the Internal Revenue Code of 1954, 26 U.S.C. § 6332(c)(1) (1976), seeking judgment against the bank "in [its] ... own person and estate" for the amount of taxes it claimed Roy owed. The District Court [1] held for the bank on summary judgment. *United States v. National Bank of Commerce,* 554 F.Supp. 110 (E.D.Ark.1982). It held that the Due Process Clause of the Fifth Amendment requires the government, when serving a Section 6331 notice of levy on a bank account bearing names of persons other than the delinquent taxpayer, to notify the other ostensible owners of the account, and give them a chance to show how much of the account they own. Otherwise, the levy statutes would deprive the other owners of their property without due process of law.

We do not reach the constitutional questions decided by the District Court. In fact, we have a duty not to reach them if the statutes themselves, interpreted aright, in fact give adequate protection to the nontaxpayers' property rights. The only appellate case in point, *United States v. Stock Yards Bank of Louisville,* 231 F.2d 628 (6th Cir.1956), holds that the government cannot succeed without proving the actual value of the delinquent taxpayer's interest in jointly owned property. We follow *Stock Yards Bank,* which reached its result as a matter of statutory construction, not due process, and affirm the District Court's judgment on that ground.

I.

The facts are stipulated. When the complaint was filed, Roy J. Reeves owed $856.61 in income tax for the year 1977.[2] On June 10, 1980, there were in the National Bank of Commerce a checking account and a savings account in the names of "Roy Reeves or Ruby Reeves or Neva R. Reeves." The balance in the checking account was $321.66, and the balance in the savings account was $1,241.60. Any one of the three parties, Roy, Ruby, or Neva R., was authorized to withdraw money from the accounts. We do not know who owned the money before it was deposited, nor do we know in what proportion the accounts are owned. The government and the bank, in fact, have agreed that "[n]o further evi-

---

1. The Hon. Garnett Thomas Eisele, Chief Judge, United States District Court for the Eastern District of Arkansas.

2. More precisely, the government claimed this amount, and the bank did not dispute the claim. Reeves is not a party to this case. We do not know if he admits his tax liability, or what defenses he might have to it.

dence as to the ownership of the monies in the subject bank accounts will be submitted." Supplement to Stipulation of Facts, Designated Record (D.R.) 13. The government's notice of levy, as amended on June 26, 1980, demanded that the bank pay over to it the $856.61 owed by Roy. The bank refused. The government brought this action on September 28, 1981, and the District Court granted the bank's motion for summary judgment on December 16, 1982.

## II.

Under Section 6331(a) of the 1954 Code,

If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary [of the Treasury] to collect such tax ... by levy upon all property and rights to property ... belonging to such person or on which there is a lien provided in this chapter for the payment of such tax.

Property on which such a lien exists is described in Section 6321:

If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States upon all property or rights to property, whether real or personal, belonging to such person.

"[A]ny person in possession of ... property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights ... to the Secretary." Section 6332(a). And if he "fails or refuses" to do so, he "shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of taxes for the collection of which such levy has been made ...." Section 6332(c)(1).

The government's position is simple. The bank had possession of rights to property belonging to the taxpayer. (Or, more accu-

rately, the bank owed the taxpayer money. Only a banker has money in a bank. The depositors are creditors of the bank.) The bank failed to surrender these rights in response to a levy. It is therefore personally liable to the United States for the amount in the accounts, but not in excess of the amount owed in taxes. If someone else, Ruby or Neva, also had an interest in the account, their remedy is to sue the government for wrongful levy under Section 7426(a)(1), which gives an action to "any person," other than the taxpayer, "who claims an interest in ... property and that such property was wrongly levied upon ...."

We think analysis will be aided by approaching the issue in two stages. First, what property or property rights of Roy Reeves did the bank have in its possession? Second, what obligation does the statute impose on the bank with respect to that property? The first question depends on state law, see *Aquilino v. United States,* 363 U.S. 509, 512–14, 80 S.Ct. 1277, 1279–80, 4 L.Ed.2d 1365 (1960), the second on federal law.

## A.

Two Arkansas statutes are relevant. Ark.Stat.Ann. § 67–521 (1980)[3] provides that when a deposit is made

in the names of two [2] or more persons and in form to be paid to any of the persons so named, such deposit ... shall become the property of such persons as joint tenants, and the same ... may be paid to any of said persons. Such payment and the receipt or acquittance of the one to whom such payment is made shall be a valid and sufficient release and discharge of said bank for all payments made on account of such deposit prior to the receipt by said bank of notice in writing signed by any one of said joint tenants not to pay such deposit in accordance with the terms thereof.

---

3. This statute was repealed by 1983 Ark.Acts No. 843, § 2. The repeal is effective March 25, 1983, so the parties' rights in this case are governed by the old statute. The substance of this statute is now codified at Ark.Stat.Ann. § 67–552(a) (1983).

And Ark.Stat.Ann. § 67–552 (1980), *amended by* 1983 Ark. Acts No. 843, § 1, provides, in pertinent part, as follows:

> 67–552. *Accounts and certificates of deposit in two or more names.*—Checking accounts and saving accounts may be opened and certificates of deposit may be issued by any banking institution with the names of two [2] or more persons, either minor or adult, or a combination of minor and adult, and such checking accounts, savings accounts and certificates of deposits may be held:
>
> \* \* \* \* \* \*
>
> (d) If an account is opened or a certificate of deposit is purchased in the name of two (2) or more persons, whether as joint tenants, tenants by the entirety, tenants in common, or otherwise, a banking institution shall pay withdrawal requests, accept pledges of the same, and otherwise deal in any manner with the account or certificate of deposit upon the direction of any one (1) of the persons named therein, whether the other persons named in said account or certificate of deposit be living or not; unless one (1) of such persons named therein shall by written instructions delivered to the banking institution designate that the signature of more than one (1) person shall be required to deal with such account or certificate of depost [deposit].
>
> \* \* \* \* \* \*
>
> (h) The person to whom such account or certificate of deposit is issued may pledge, withdraw or receive payment and any such payment made by the banking institution shall be a complete discharge as to the amount paid.

The deposit agreement or signature card is not in the record. We do not even know whether the three Reeveses whose names are on the account are related by blood or marriage. All we know is that the account is in the names of Roy or Ruby or Neva. One might think that Section 67–521, quoted above, means that Roy, Ruby, and Neva are joint tenants, and that each of them therefore owns one-third of the account, with right of survivorship upon the death of either or both of the others. But the statute has not been so construed. *Black v. Black,* 199 Ark. 609, 135 S.W.2d 837 (1940), holds that the statute was

> passed for the protection of the bank in which the deposit was made . . . . The statute effects no investiture of title as between the depositors themselves, but only relieves the bank of the responsibility and duty of making inquiry as to the respective interests of the depositors in the deposit until one of the joint tenants shall give notice in writing that the joint ownership has been dissolved.

199 Ark. at 617, 135 S.W.2d at 841. *Accord, McGuire v. Benton State Bank,* 232 Ark. 1008, 1012, 342 S.W.2d 77, 79 (1961).

Thus, Roy could have withdrawn any amount he wished from the account and used it to pay his debts, including federal income taxes, and his co-owners would have had no lawful complaint against the bank. But they might have had a claim against Roy for conversion. The rights of the co-owners *inter sese* are not determined by the cited Arkansas statutes. Those rights depend on the intention of whoever deposited the money, or on whatever agreement, if any, might have been made among the co-owners, or on some other applicable rule of state law. If, for example, a spouse makes a deposit in a bank account that bears both spouses' names, a tenancy by the entirety is created, defeasible by either spouse at will simply by making a withdrawal. *E.g., Black v. Black, supra.* But here we do not know whether Roy is married to Ruby or Neva. In fact, both the government and the bank have studiously avoided finding out. Nor do we know whether any of the co-owners has given the notice to the bank that the statute mentions. In short, we know, or presume, that each co-owner could withdraw all of both accounts, but that is all we know.

It might be argued that the very right, conferred by statute, to make withdrawals is a "right to property" belonging to Roy, on which the government could levy. The government, on this view, would stand in Roy's shoes and could do anything Roy

could do, subject to whatever duties Roy owes to Ruby or Neva. But that, at least as to ordinary creditors, is not the law of Arkansas. In *Hayden v. Gardner*, 238 Ark. 351, 381 S.W.2d 752 (1964), the Supreme Court specifically rejected the view that a creditor of one co-owner is subrogated to that co-owner's power to withdraw the entire account. Instead, a creditor must join both co-owners as defendants, and the co-owner who is not the debtor may show by parol or otherwise the extent of his or her interest in the account. Only that portion of the account not so shown to belong to the non-debtor co-owner may be reached by the other co-owner's creditor on a garnishment.

### B.

We now turn to the cases interpreting the levy statutes, Sections 6331 and 6332, and their predecessors. Distress and sale of goods of taxpayers who refuse to pay have been authorized ever since the First Congress. Act of March 3, 1791, c. 15, § 23, 1 Stat. 204. See *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 352, 97 S.Ct. 619, 628, 50 L.Ed.2d 530 (1977). The case most nearly in point for present purposes is *United States v. Stock Yards Bank of Louisville*, 231 F.2d 628 (6th Cir.1956). There, the Internal Revenue Service served a levy on the bank, which had in its possession 150 $25.00 U.S. Savings Bonds, each registered in the names of "Clarence J. Theobald or Mrs. Theas Theobald." Clarence J. Theobald owed income taxes. Mrs. Theas Theobald, who was his wife, did not. The bank refused to honor the levy, and the United States brought suit to hold it personally liable.[4] The Court of Appeals, speaking through Judge (later Mr. Justice) Stewart, held for the bank.

The Court first described the incidents of co-ownership of Series E bonds:

[A] co-owner may alone present the bond for redemption, receive payment in full, and thereby eliminate the other co-own-

er's interest in the bond, so far at least as the issuer is concerned. 31 Code Fed. Reg. § 315.45.

As between two co-owners, however, the regulations as well as judicial decisions have recognized that the extent of the property interest of each is a question of fact, not of law. One co-owner may as a matter of fact be the sole owner of the bond; he may be a half owner; he may have some other fractional ownership. 231 F.2d at 631. In the case before it, the Court said,

the government adduced no evidence to establish the extent, if any, of [the taxpayer's] ... property interest in [the bonds] .... Proof of the actual value of the taxpayer's interest was an essential element of the government's case under the statute, and for lack of such proof the case falls.

*Ibid.* In support of this result, the Court cited a number of "decisions relating to *joint bank accounts* and insurance policies," *ibid.* (emphasis ours), and described them as "closely analogous."

The Sixth Circuit further explained:

It should be pointed out ... that distraint is a rough and ready remedy. This short cut form of self-help developed by the common law has been available to the government in pursuit of delinquent taxpayers since the eighteenth century. Where the value and nature of the taxpayer's property rights are not in question, distraint is no doubt a useful tool in the effective enforcement of the Internal Revenue laws. But it is a blunt instrument, ill-adapted to carve out property interests where their nature and extent are unclear.

There is available to the government an alternative remedy well-designed to resolve the issues in the present case. Under Section 3678 of the Internal Revenue Code of 1939 [5], the United States

---

4. Suit was brought under Section 3710 of the Internal Revenue Code of 1939, 26 U.S.C. § 3710 (1952). This predecessor statute does

not differ in any relevant way from §§ 6331 and 6332 of the present Code.

5. The present version of this statute is Section 7403 of the 1954 Code, which is equally availa-

can bring suit against the bank to enforce a lien on the bonds and name both the taxpayer and his wife co-defendants. In such a proceeding the extent of the taxpayer's interest in the bonds can be finally adjudicated, and the rights of all parties fully protected.

*Id.* at 631–32 (citation and footnote omitted).

It is at once apparent that these words might have been written with just the present case in mind. We see no relevant different between *Stock Yards Bank* and the case now before us. The government, Brief for Appellant p. 18, offers only the following suggested distinction:

> *Stock Yards Bank* involved savings bonds registered in the name of taxpayer and his wife as co-owners. The court required the Government to bring a lien enforcement action for a judicial determination of ownership interests. Federal law provides in the case of savings bonds that ownership rights are to be determined by an agreement of the co-owners or by valid judicial process. See Treasury Regulations Governing U.S. Savings Bonds, Series A, B, C, D, E, F, G, H, J, and K, and U.S. Savings Notes, 31 C.F.R. Sec. 315.21(a). Thus, the holding in *Stock Yards Bank* took place in a significantly

different legal environment than the one here involved.

We reject this argument. Certainly the "legal environment" of *Stock Yards Bank* is "different": there, the rights of co-owners depended on federal law; here, they depend on state law. But the difference is without legal significance. It pertains only to the law governing the nature of the taxpayer's property rights. It has nothing to do with the operation of the levy statutes on those rights, once their nature and extent are ascertained. Here, as in *Stock Yards Bank,* there are co-owners who may demand full payment, and whose rights may be affected if the levy is honored. It matters not which sovereign in our federal system conferred the rights at stake.[6]

We conclude, then, that a holding for the government here would place this Court in square conflict with the Sixth Circuit.[7]

### C.

The government also contends that a number of cases—probably the majority—either expressly or by implication hold that a person holding property in which both the taxpayer and someone else have an interest, must honor a Section 6331 levy. There are unquestionably such cases. We choose to follow *Stock Yards Bank* instead.

---

ble to the government here. See 231 F.2d at 632 n. 2.

**6.** It might also have been argued that *Stock Yards Bank* was decided before Section 7426 of the present Code, added by the Federal Tax Lien Act of 1966, Pub.L. No. 89–719, 80 Stat. 1143, became law. This is the provision that gives non-taxpayers an express remedy against the United States when its collection effort wrongfully interferes with their property. The answer is that before 1966 third parties "had available an equivalent judicially-created remedy in which [they] ... could have contested the propriety of [a] ... notice of levy." *United States v. Weintraub,* 613 F.2d 612, 623 (6th Cir.1979). The statements that no such remedy existed before 1966, appearing in *United Sand & Gravel Contractors, Inc. v. United States,* 624 F.2d 733, 737 (5th Cir.1980), and *Flores v. United States,* 551 F.2d 1169, 1174 (9th Cir.1977), seem to be mistaken. See the full discussion in *Gordon v. United States,* 649 F.2d 837, 227 Ct.Cl. 328 (1981).

**7.** Other cases, some of which are cited in *Stock Yards Bank,* support its reasoning to one degree or another. Because each of them is at least arguably distinguishable, we do not set out their holdings at length. See *United States v. Bowery Sav. Bank,* 297 F.2d 380, 385 (2d Cir.1961) (Friendly, J.) (*held,* for the government; *sed aliter* if an assignee of the savings account levied on had, before the levy, notified the bank of his claim); *Raffaele v. Granger,* 196 F.2d 620, 623 (3d Cir.1952) (warrant of distraint against bank quashed; "The United States has no power to take property from one person, the innocent spouse, to satisfy the obligation of another, the delinquent spouse."); *United States v. New England Merchants Nat'l Bank,* 465 F.Supp. 83 (D.Mass.1979); *United States v. Emigrant Indus. Sav. Bank,* 122 F.Supp. 547 (S.D.N.Y.1954); *United States v. Aetna Life Ins. Co.,* 46 F.Supp. 30 (D.Conn. 1942).

1. Only three of the cases that tend to support the government's position are from courts of appeals. Two of these are actions by third parties against the United States for wrongful levy under § 7426. In both of these two, the action was held barred by the nine-month limitations period fixed by Section 6532 of the Code for such actions. In *United Sand & Gravel Contractors, Inc. v. United States,* 624 F.2d 733 (5th Cir. 1980), the Revenue Service served a notice of levy on the Army Corps of Engineers, which owed money jointly to the taxpayer, a prime contractor, and to the plaintiff, a subcontractor. The Corps honored the levy. The plaintiff waited more than nine months to bring its Section 7426 action against the government, and therefore it lost its case. In the course of its opinion, the Fifth Circuit does say that the "Corps was required by I.R.C. § 6332 to turn over funds due" to the taxpayer, 624 F.2d at 739. If this statement is read as meaning that the duty to turn over the funds included even that portion of the money to which the plaintiff subcontractor, as opposed to the taxpayer prime contractor, was entitled, then the opinion does, to that extent, support the government's position here, though probably only in dictum. Another portion of the opinion, on the other hand, remarks that the Corps in fact had honored the levy, and that it was therefore unnecessary to speculate what rights the IRS would have had (a Section 6332 action against another federal agency?) if the levy had been refused. *Id.* at 737 n. 5. The implication is that a different sort of question is presented by an action to impose personal liability on a person refusing to honor a levy. That is of course exactly the posture in which the present case presents itself.

*Dieckmann v. United States,* 550 F.2d 622 (10th Cir.1977), is the same sort of case. A Section 7426 action was held barred by limitations. The third-party, non-taxpayer plaintiff argued that the statute should not begin to run until he received notice of the levy on the property in which he claimed an interest. The Court held that the United States had no duty to give such notice, even when it knew that a third party had a purchase-money security interest in the property of the taxpayer on which it planned to levy. Again, the case cuts in the government's favor, but it is not direct authority for the proposition—which the government must sustain here—that the holder of the property could not have asserted, as a defense to a Section 6332 action to enforce the levy, that someone other than the taxpayer had an interest in the property.

The third case in this group of appellate decisions is *United States v. Citizens & Southern Nat'l Bank,* 538 F.2d 1101 (5th Cir.1976), *cert. denied,* 430 U.S. 945, 97 S.Ct. 1580, 51 L.Ed.2d 792 (1977). It does say that a bank may not defend against a Section 6332 action to enforce a levy by showing that it had a lien on the taxpayer's account prior to that of the United States. 538 F.2d at 1106. The opinion also says, however, that the result would be otherwise if the bank had taken some positive action, before the levy, to assert a set-off against the account in order to collect money owed to it by the taxpayer-depositor. The import of the case is therefore less than clear. It also seems to us a strange rule of law that a bank with a prior lien on an account must turn over the account in response to a levy, and then litigate its lien in a subsequent Section 7426 action, instead of being allowed to assert the lien as at least a partial defense to the government's Section 6332 action. Such a rule breeds litigation and multiplies expense for no good purpose. *Quaere,* whether the bank would have been allowed, in the government's action to enforce the levy, to plead a Section 7426 counterclaim.

None of these cases even cites *Stock Yards Bank,* and none of them directly and necessarily conflicts with it. We can disagree with the implications of these three cases without creating a direct conflict with another circuit. We cannot hold for the government without doing so, because such a holding would be at war with *Stock Yards Bank.* We feel some compunction about making more work for the Supreme Court by disagreeing with the only clear appellate

precedent in point. Holmes said that he would dissent only when he had "got the blood of controversy in [his] ... neck."[8] The same may be said, as a rule, about disagreeing with another court of appeals and creating for the first time a clear conflict in the circuits.

2. The government also relies on a number of district-court cases, and some of them are clearly in point and supportive of its position. *United States v. Equitable Trust Co.,* 49 AFTR2d 82–723 (D.Md.1982); *Sebel v. Lytton Sav. & Loan Ass'n,* 15 AFTR2d 488 (S.D.Cal.1965); *Determan v. Jenkins,* 111 F.Supp. 604 (N.D.Ga.1953); *United States v. Third Nat'l Bank & Trust Co.,* 111 F.Supp. 152 (M.D.Pa.1953).[9] See also *Douglas v. United States,* 562 F.Supp. 593 (S.D.Ga.), *aff'd mem,* 723 F.2d 919 (11th Cir.1983); *DiEdwardo v. First Nat'l Bank of Bath,* 41 AFTR2d 78–1370 (E.D.Pa.1978); *Tyson v. United States,* 63–1 USTC 87,736 (D.Mass.1962).[10] We can of course disagree with any of these cases without creating a conflict in the circuits. But the real question is, not whether an opinion was written by a district court or by a court of appeals, but which opinion is the better reasoned. Most of the district-court opinions cited are more like statements of results than essays written to give a result logical support.[11]

3. So where does the better reasoning lie? We think it lies with *Stock Yards Bank.* For one thing, the contrary rule might expose the bank to double liability. If it pays over to the Revenue Service the money demanded to pay Roy's taxes, it may have to pay again after being sued by Ruby or Neva. The government replies, first, that this is irrelevant, that Section 6332 does not say that potential double liability is a defense, and therefore it is not. If the bank has to pay twice, too bad. There are cases that so hold. *E.g., United States v. Third Nat'l Bank & Trust Co., supra,* 111 F.Supp. at 156. We do not accept such a wooden reading of the statute. Such a callous indifference to natural justice should not be attributed to Congress in the absence of clear statement.

The government argues in the alternative that the levy statutes themselves give anyone honoring a levy a complete defense, against taxpayers and non-taxpayers alike. On this view, the non-taxpayer's only recourse would be a Section 7426 action for wrongful levy against the government. Again, there is authority to support this view. *E.g., Sebel v. Lytton Sav. & Loan Ass'n, supra,* 15 AFTR2d at 489. But no reasoning is given—only an *ipse dixit*—and the words of the levy statute just will not yield this meaning.

Section 6332(d) provides as follows:

**(d) Effect of honoring levy.**—Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary surrenders such property or rights to property (or discharges such obligation) to the Secretary (or who pays a liability under subsection (c)(1)) shall be discharged from any obligation or liability to the delinquent taxpayer with respect to such property or rights to property arising from such surrender or payment. In the case of a levy which is satisfied pursuant to subsection (b), such organization shall also be discharged from any obligation or liability to any

---

**8.** 1 Holmes-Laski Letters 266 (Howe ed. 1953).

**9.** The first two cases in this group, both decided after *Stock Yards Bank,* do not even cite it. *Stock Yards Bank* at least acknowledges *Third Nat'l Bank* with a *But see.* 231 F.2d at 631.

**10.** The government also cites *United States v. Capital Sav. Ass'n,* 576 F.Supp. 790 (N.D.Ind. 1983), but there the bank was allowed to show, in a § 6332 action, that a non-taxpayer owned

half the account, and judgment was entered against the bank only for the other half.

**11.** This is a statement of fact, not a criticism. The district courts are often hard put to it just to decide what the result should be in the ever-growing numbers of cases that confront them, let alone write a full opinion, and the same thing can, unhappily, be increasingly said of the courts of appeals as well.

beneficiary arising from such surrender or payment.[12]

Plainly, one who honors a levy is discharged from liability only "to the delinquent taxpayer," except in the special case of life insurance. There is not even an implication that Congress intended to supplant a non-taxpayer's common-law remedy for conversion.

4. Dicta in a recent opinion of the Supreme Court also support our decision to follow *Stock Yards Bank.* The case is *United States v. Rogers,* —— U.S. ——, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983), and it involved the government's right to use Section 7403, the lien-foreclosure statute, to collect taxes from property in which both the taxpayer and another had an interest. In the course of its opinion, the Court also discussed that other collection tool, the Section 6331 levy and distraint, and it had this to say:

> Section 6331, unlike § 7403, does not require notice and hearing for third parties, because *no rights of third parties are intended to be implicated by § 6331.* Indeed, third parties whose property or interests in property have been seized *inadvertently* are entitled to claim that the property has been "wrongfully levied upon," and may apply for its return either through administrative channels, 26 U.S.C. § 6343(b), or through a civil action filed in a federal district court, § 7426(a)(1); see §§ 7426(b)(1), 7426(b)(2)(A).

103 S.Ct. at 2144. (Emphasis ours; footnote omitted.)

This passage implies that levy is not normally intended for use as against property in which third parties have an interest, and that the Section 7426 remedy is designed to protect those third parties whose property

has been seized "inadvertently." The Supreme Court evidently did not contemplate the use of Section 6331 as against property bearing on its face the names of third parties, and in which those third parties likely have a property interest. The joint bank account involved here is just that type of property, and the government's attempt to seize it, no matter how much of it Roy owns, is not at all inadvertent. *Accord, Mansfield v. Excelsior Ref. Co.,* 135 U.S. 326, 341, 10 S.Ct. 825, 831, 34 L.Ed. 162 (1890) (cited with approval in *Rogers,* 103 S.Ct. at 2144 nn. 20 & 21) (R.S. § 3187, a statutory ancestor of § 6331, held not to give a Collector of Internal Revenue "authority, in that summary mode [distraint], to sell and convey the interest of one who was not a delinquent.").

### III.

For the reasons given, and without expressing any view on the constitutional conclusions reached by the District Court, we hold that the summary judgment entered for the bank was proper. The government is free to pursue the taxpayer's interest in the bank account in question by bringing suit to foreclose its lien under Section 7403, joining as defendants the three co-owners of the account. It may also ask the District Court, when such suit is filed, to issue an appropriate order restraining the bank from allowing any withdrawals from the account, until the rights of the various parties have been determined.

Affirmed.

---

12. The reference to subsection (b) is to a special rule passed for levies on life-insurance and endowment contracts. It provides that the issuer of such a contract, upon being served with a levy, must pay over whatever amount of money the taxpayer could have had advanced to him. The provision was added to change the rule of cases such as *United States v. Aetna Life Ins. Co., supra,* 46 F.Supp. at 34–35, that a life-insurance company is not obliged to pay over the cash-surrender value of a policy owned by the taxpayer, because to do so would destroy or affect the rights of others, for example, the beneficiary. There is no such special provision with respect to joint bank accounts or other kinds of property in which non-taxpayers have an interest.