**VANDER STUCKEN v. WILLOUGHBY et al.**
(No. 6427.)

(Court of Civil Appeals of Texas. Austin.
March 15, 1922.)

**1. Pledges ⬤⟞51—Whether pledgee sold pledged note on pledgor's default in payment of secured note or sold merely secured note held for jury.**

In action involving title to pledged note as between pledgor's assignee and pledgee's transferees, to whom pledgee transferred possession of such note and also the secured note, the question of whether the pledgee sold the pledged note on pledgor's default in payment of the secured note under provision of secured note entitling it to so do, or merely sold the secured note, *held* for the jury.

**2. Evidence ⬤⟞460(11)—Parol testimony that witness did not purchase note held admissible notwithstanding indorsement.**

In action involving title to pledged note as between pledgor's assignee and pledgee's transferees to whom pledgee transferred possession of such note and also the secured note, involving issue as to whether the pledgee had sold the pledged note on pledgor's default in payment of secured note, or had sold the secured note, testimony of pledgee's transferee that he did not purchase the secured note *held* admissible, though he had struck out the name of an indorsee on secured note and inserted his own name in lieu thereof, as against contention that such testimony contradicted terms of written contract evidenced by indorsement, where pledged note also contained indorsement evidencing sale thereof by pledgee to transferee.

**3. Pledges ⬤⟞56(1)—Pledgee could not legally sell both pledged and secured note on pledgor's failure to pay secured note.**

A bank having possession of a note to secure payment of payee's note to the bank, authorizing the bank to sell the pledged note on payee's default in payment of secured note, could not legally sell both notes on payee's default in payment of secured note.

**4. Evidence ⬤⟞424—Rule as to exclusion of oral testimony to contradict terms of written contract applicable only as between parties thereto.**

The rule as to the exclusion of oral testimony to contradict or vary the terms of a written contract is applicable only as between the parties to such contract, since a stranger thereto, not being bound by its terms, cannot hold other parties bound thereby.

**5. Pledges ⬤⟞56(1)—Pledgor's assignment of pledged note to third party held not to affect pledgee's right to sell note on pledgor's default in payment of secured note.**

Pledgor's assignment of pledged note to third party could not affect pledgee's right to sell note on pledgor's default in payment of note to pledgee, under provision of secured note, even though pledgee had notice of pledgor's assignment of note to third party.

**6. Pledges ⬤⟞56(1)—Pledgee's power to sell pledged note on default in payment of secured note not suspended by pledgor's death.**

Pledgee's power to sell pledged note on default in payment of secured note was not suspended by pledgor's death.

**7. Bills and notes ⬤⟞363—Innocent purchaser of negotiable note before maturity acquired good title.**

An innocent purchaser of negotiable note before maturity acquires good title thereto.

Appeal from District Court, Tom Green County; C. E. Dubois, Judge.

Action by E. E. Willoughby and another against E. F. Vander Stucken and others. Judgment for plaintiffs, and named defendant appeals. Reversed and remanded.

Wardlaw & Elliott, of Sonora, and Blanks, Collins & Jackson, of San Angelo, for appellant.

Hill & Hill, of San Angelo, for appellees.

**Findings of Fact.**

JENKINS, J. On November 1, 1916, Frank Baker executed to J. T. Evans, Sr., his promissory note for $7,619.44, due five years after date, secured by a vendor's lien on 15,000 acres of land in Sutton county, Tex., conveyed by Evans to Baker. On January 2, 1919, Evans executed to the First National Bank of Junction his promissory note for the sum of $2,838, due May 1, 1919, which note upon its face recited that the Baker note had been deposited with the bank as collateral security for the payment of said Evans note. Said recital contained, among other things, the following:

"Now, in the event of the nonpayment of this note at maturity, the holders hereof are hereby invested with full authority to use, transfer, hypothecate, sell or convey the said property, or any part thereof, or cause the same to be done, at public or private sale, with or without notice or demand of any sort, at such place and on such terms as the said holders hereof may deem best."

This note and transfer were in lieu of a similar note theretofore given by Evans to the bank.

On November 12, 1918, the appellees became sureties for Evans on a note owed by him to a loan company, in the sum of $48,-606.25. To indemnify the appellees against loss by reason of said suretyship, Evans executed to them a mortgage on certain property, and also a transfer of the Baker note, reciting that the same was deposited with the First National Bank of Junction to secure the Evans note above referred to, and—

"Said note (Baker note) to be held by said bank aforesaid for the use and benefit of the said Paul Willoughby and E. E. Willoughby, subject to the collateral lien aforesaid, and upon payment of the amount due said bank

⬤⟞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

as aforesaid, the same shall be delivered by said bank to the said Paul and E. E. Willoughby, their heirs and assigns."

This instrument was duly recorded in the records of Sutton county, February 17, 1919.

On March 26, 1919, Paul Willoughby gave the bank written notice of the transfer of the Baker note, subject to the lien held by the bank. The Evans note was not paid at maturity. On May 25, 1919, the bank sold to Dr. H. R. Wardlaw either the Evans note or the Baker note. The evidence as to which note was sold to Wardlaw is conflicting. Both notes were delivered, to him. The Baker note was indorsed by the bank in blank, without recourse. The Evans note, at the time it was delivered to Dr. Wardlaw, was indorsed by the Junction Bank to the First National Bank of Sonora. Wardlaw sold to appellant either the Evans note or the Baker note; both were delivered to appellant. At the time of this transaction, Wardlaw erased the name of the Sonora Bank, on the indorsement of the Evans note, and inserted in lieu thereof his own name. At the time of this transaction, Evans was dead. Subsequently administration was taken out on his estate.

The case was submitted to a jury, upon the following issues:

"(1) Upon what date did Dr. H. R. Wardlaw pay $2,730.02 to the defendant the First National Bank of Junction, Tex.? Answer: May 25, 1919.

"(2) What, if any, is the balance of the indebtedness owing to plaintiffs by J. T. Evans' estate * * * by reason of payment by plaintiffs as indorsers under contract of November 12, 1918? Answer: $11,969.97.

"(3) Did the defendant H. R. Wardlaw collect any interest on the Frank Baker vendor's lien note? Answer: None.

"(4) Did the defendant E. F. Vander Stucken collect any interest on the said Frank Baker vendor's lien note, and, if so, how much? Answer: $1,075.60."

Upon these answers, the court entered judgment for appellees for title and possession of the Baker note; appellees having tendered into court the amount, principal and interest, of the Evans note.

## Opinion.

[1-4] Appellant alleged that he purchased the Frank Baker note. He testified that he purchased this note, and did not purchase the Evans note. If this is true, the court erred in rendering judgment for appellees. Appellant requested the court to submit this issue to the jury, which request was refused. Appellees say that the action of the court in this regard was correct, for the reason that the oral testimony of Dr. Wardlaw, that he did not purchase the Evans note, is incompetent, for the reason that it varies and contradicts a written contract; such written contract being the indorsement of the Junction bank on the Evans note. As heretofore stated, at the time the Evans note was delivered to Dr. Wardlaw, it appeared to have been indorsed to a bank at Sonora. Wardlaw afterwards struck out the name of the Sonora bank and inserted his own in lieu thereof. Appellees say that this should be held to relate back to the delivery of the note by the bank to Wardlaw. However this may be, we do not think that the doctrine with reference to parol evidence not being permissible to contradict or vary the terms of a written contract is applicable under the facts of this case, for the reason that, even if the indorsement on the Evans note amounts to a contract for the sale of said note to Wardlaw, the indorsement on the Baker note equally evidences a sale of this note to Wardlaw. The bank did not and could not legally have sold both notes to Wardlaw, and we think this state of facts raises the issue as to which note was in fact sold, and that oral testimony is permissible to show such fact. Again, the rule as to the exclusion of oral testimony to contradict or vary the terms of a written contract is applicable only as between the parties to such contract. A stranger to such written instrument is not bound by its terms, and therefore he cannot hold other parties bound by the same. Johnson v. Portwood, 89 Tex. 249, 34 S. W. 596, 787; Jarvis v. Matson, 52 Tex. Civ. App. 170, 113 S. W. 328; 22 C. J. 1292, 1293; 10 R. C. L. 1020.

[5] Appellees reply to this that they are not strangers to this transfer of the Evans note, by reason of the fact that they secured rights thereunder, namely, the right to have appellant stand in the shoes of the bank, and recognize their lien on the Baker note. Their right to such lien, however, did not arise out of this transaction between the bank and Wardlaw, but out of the transfer of the Baker note by Evans to them. They did nothing in reliance upon this transaction between the bank and Wardlaw. If the right of appellees to the Baker note, subject to the payment by them of the Evans note, is superior to that of appellant, such right arises from the fact that they had the transfer of the Baker note to them recorded in Sutton county. It would seem, under the authorities, that this would constitute constructive notice as to such transfer. B. L. A. v. Brackett, 91 Tex. 44, 40 S. W. 721; Henderson v. Pilgrim, 22 Tex. 464. But, if it be true that Wardlaw was charged with notice of the assignment by Evans to appellees, such assignment conveyed the Baker note subject to the rights of the Junction bank. The right of the Junction bank, among other things, was to sell the Baker note at public or private sale, for any sum that it might see proper, after maturity of the Evans note. The transaction with Wardlaw was after the maturity of the Evans note, and, if the bank

exercised its right to sell the Baker note, appellees had no further interest therein.

.The subsequent contract between Evans and appellees, in which the Baker note was assigned to appellees as collateral subject to right of the bank, could not limit such right as the bank had previously acquired. The appellees might have protected themselves by paying off the Evans note at its maturity. Twenty-five days had elapsed after the maturity of the Evans note before the transaction with Wardlaw, and appellees had not communicated with the bank on the subject.

[6] Appellees allege that the power of the bank to sell the collateral note was suspended by the death of Evans, and cite in support of this contention Robertson v. Paul, 16 Tex. 472, and·a number of other cases following that decision.

. Appellant's reply to this contention is that the line of ·decisions above referred to is based upon the proposition that a mortgage being a debt, and as our statute with reference to the probate court requires that all debts should be presented to the administrator for his approval or rejection, such debt cannot be enforced pending administration, or before the time for administration has expired, for the reason that it might interfere with the priority of claims created by our statute in probate proceedings; but that this rule does not apply where the foreclosure by a trustee could not interfere with our probate statutes. In support of this appellant cites Weiner v. Zweib, 105 Tex. 262, 141 S. W. 771, 147 S. W. 867. In that case, upon rehearing, it was held that the sale of a homestead under a deed of trust pending administration was legal, for the reason that the homestead constituted no part of the estate of the deceased subject to administration. In this connection, appellant contends that a pledge does not constitute any part of the estate of the deceased until the debt for which it was pledged had been paid, and the pledge redeemed. This contention is supported by Huyler v. Dahoney, 48 Tex. 244; Clarke v. Bank (Tex. Civ. App.) 150 S. W. 203; Andrews v. Ins. Co., 92 Tex. 587, 588, 50 S. W. 572; Fulton v. Bank, 26 Tex. Civ. App. 115, 62 S. W. 86; Rogers v. Watson, 81 Tex. 403, 17 S. W. 29; Taylor v. Williams, 101 Tex. 388, 108 S. W. 815.

As the Baker note was held by the Junction bank as a pledge to secure the payment of the Evans note, the death of Evans did not suspend the power of the bank to sell the Baker note.

As we view this case, both the pleadings and the evidence raise the issue as to which of the two notes referred to was sold by the bank to Dr. Wardlaw, and the court erred in refusing to submit that issue to the jury; for which reason this case must be reversed.

[7] The evidence raised the issue as to whether or not appellant was an innocent purchaser of the Baker note. · As the case is to be retried, we do not deem it necessary to comment on the evidence as to this issue. The law is well settled that an innocent purchaser of·a negotiable promissory note before maturity acquires good title to the same.

For the reasons stated, the judgment of the trial court herein is reversed, and this cause is remanded for a new trial.

Reversed and remanded.