**McCOY et al. v. TEXON ROYALTY CO. et al.**

No. 10297.

Court of Civil Appeals of Texas.
San Antonio.

Jan. 4, 1939.

Rehearing Denied Feb. 15, 1939.

Sidney P. Chandler, of Corpus Christi, for appellants.

Johns, McCampbell & Snyder, of Corpus Christi, and Vinson, Elkins, Weems & Francis and Lawler, Wood & Childress, all of Houston, for appellees.

SLATTON, Justice.

Zula McCoy, joined pro forma by her husband, Elmer McCoy, instituted this suit against Texon Royalty Company, United Production Corporation, McElreath & Suggett Oil Corporation and Ford Bradish, for title and possession of 951.55 acres of land situated in Nueces County, Texas, and for damages by reason of the drilling upon said land of a well to·a depth of 6000 feet, which, on account of the well being declared a dry hole, resulted in giving said land the reputation of being nonproductive of oil and gas and thereby rendered valueless for oil and gas leasing. She alleged that such drilling was without her authority or consent and her damage was averred to be $190,310.

The averments to show trespass were as follows: That the oil and gas lease upon which the entry was made was void because the property belonged to the separate estate of Zula McCoy and that she had never appeared before a notary public and acknowledged the execution of the lease. That the assignment to Texon Royalty Company was invalid for the same reason. That if such lease was ever valid it had expired September 12, 1935, on account of failure to pay the rental due upon such date. That the Gas Company cooperated with Texon Royalty Company in the trespass and in the drilling of the well, and such persons acted jointly and

severally in committing the trespass and resulting damage.

Texon Royalty Company answered by general denial and pleaded that on September 12, 1931, the McCoys executed to McElreath & Suggett an oil and gas lease covering said land for a period of five years and that such lease was assigned to it July 26, 1933. That prior to the assignment, the Insurance Company had filed suit in Bexar County against the McCoys to foreclose vendor's and deed of trust liens which secured some $50,000 indebtedness of the McCoys to the Insurance Company. That prior to the assignment, it was agreed between the Insurance Company, McElreath & Suggett, Texon Royalty Company and the McCoys, or if the McCoys did not agree, then with their knowledge and consent that if the rentals would be paid, as provided by said lease or drilling operations in lieu thereof be conducted, the lease would continue through its term, notwithstanding the foreclosure suit and in the event of foreclosure and purchase by the Insurance Company, the lessor's rights would be protected through a new lease covering the unexpired term of the old lease. In reliance upon such agreement, Texon Royalty Company accepted an assignment of an oil and gas lease to a part of said land and expended a large sum of money in drilling during the year 1933. That when the next rental payment became due September 12, 1934, a dispute arose as to whom the rentals should be paid, that is, to the Insurance Company or the McCoys. That in furtherance of the agreement, the rentals were deposited in the registry of the court, by order dated September 10, 1934, and by order dated October 30, 1934, such rentals were paid to the McCoys. Such rentals so paid and accepted covered the period from September 12, 1934, to September 12, 1935. Subsequently a judgment of foreclosure was entered and said property was sold to the Insurance Company January 1, 1935. That afterwards the McCoys initiated negotiations with the agent of the Insurance Company for a repurchase of said land, which resulted in the sale to the McCoys of the land for a consideration of $2500 cash and vendor's lien note for $41,100, and the further consideration of the McCoys in recognition and performance of the agreement aforesaid should execute and deliver to Texon Royalty Company and McElreath & Suggett Oil Corporation an oil, gas and mineral lease for a term of two years from and after September 12, 1934. That in performance of said agreements, the McCoys signed the lease to Texon Royalty Company, dated September 12, 1934, and delivered it to the agent of the Insurance Company to be delivered to the Company upon consummation of the repurchase agreement. That the Insurance Company relied upon the acknowledgment as shown by the certificate, which was regular upon its face, in accepting the lease and in delivering the deed to the McCoys. The Insurance Company was induced to deliver its deed in reliance upon the McCoys' agreement with regard to the lease and in reliance upon its validity. That the Insurance Company would not have delivered its deed to them if it had known that Mrs. Zula McCoy had not actually appeared before a notary and acknowledged the lease. That by reason of such facts the Texon Royalty Company was the legal and equitable owner of the oil and gas lease. That with the delivery of all instruments in performance of the repurchase, the McCoys legally executed, acknowledged and delivered to the Insurance Company an assignment of rents, royalties, which was intended to and did cover all rents and royalties accruing under the terms of said lease of September 12, 1934. That Texon Royalty Company paid the annual rental due under the lease September 12, 1935, and the McCoys received, accepted and retained such rental with full knowledge of the time and manner of payment by which the lease was continued in effect to September 12, 1936. That prior to September 12, 1936, Texon Royalty Company entered upon said land with the consent of the McCoys, drilled a well, all within the period of the lease. Texon Royalty Company pleaded in the alternative that if for any reason its new lease was ineffectual, then that the agreed order by which the rentals were paid into court and accepted by the fee owners of the land constituted an agreement to continue the lease.

The United Production Corporation adopted the allegations of the Texon Royalty Company insofar as they related to it and denied generally the averment of the McCoys. By supplemental petition the McCoys pleaded general demurrer and denial and special exceptions, and specially averred that the judgment of foreclosure was res adjudicata of all rights claimed by Texon Royalty Company. That prior to September 10, 1934, McElreath & Suggett

Oil Corporation had paid to and for the benefit of Elmer McCoy all delayed rentals for the full term of the original lease, and that if McElreath & Suggett Oil Corporation or Texon Royalty Company paid anything into the registry of the court, such was a voluntary payment.

The cause was tried to a jury. The trial court at the close of the evidence granted the motion of United Production Corporation for a directed verdict. A similar motion of Texon Royalty Company was overruled. The jury answered special issues submitted by the court upon which a judgment was rendered denying to Zula McCoy any damages. She brings the case here by appeal, and alleges 217 assignments of error through 61 propositions of law. The transcript and statement of facts contain 1221 typewritten pages and original exhibits. The "briefs" contain 450 typewritten and printed pages, and cite 191 authorities. The jury made the following findings between Zula McCoy and Texon Royalty Company:

1. That Zula McCoy did not appear before the notary for the purpose of having her acknowledgment taken to the lease dated September 12, 1934:

2. That Zula McCoy did not submit herself to the notary for the purpose of his taking her acknowledgment to such instrument.

3. That drilling operations were not commenced on the land in question on or before one year from September 12, 1934.

4. That the sum of $951.55 was not paid or tendered to plaintiff Zula McCoy or to her credit with Martindale Mortgage Company, the rental repository, as delay rental on or before September 12, 1935.

5. That plaintiffs did not notify Texon on or about September 8, 1936, not to commence drilling upon the land in question.

6. That after having been notified not to commence drilling operations, Texon did, under claim of right thereto, continue to use and occupy the land in question in the drilling of a well in the northwest corner thereof.

7. That the well in question drilled by Texon Royalty Company between September 11, 1936, and October 4, 1936, did not give to the land the character or reputation at the time of land not productive of oil or gas to the depth to which it was drilled, 6006 feet.

8. That the drilling of the well in question did not give the north 320 acres out of the 791.55-acre tract on which the well was drilled the character or reputation of land nonproductive of oil or gas to the depth of 6006 feet.

9. That the reasonable market value per acre of the leasehold estate in the entire tract of 951.55 acres was $4 per acre on September 11, 1936 (the date upon which the drilling of the well in question began), and $4 per acre on or about October 4, 1936, the date (as shown by the evidence) on which the well was completed as a "dry hole."

10. That prior to July 26, 1933, when Texon acquired its interest in the original lease, the Insurance Company agreed with Texon and McElreath & Suggett Oil Corporation that if they should drill for oil and gas upon the land in question or pay rentals, under the lease dated September 12, 1931, and the Insurance Company should foreclose its lien upon the land and acquire title thereto, then it would execute and deliver to them an oil and gas lease similar in terms and conditions to the lease dated September 12, 1931, for the unexpired primary term thereof.

11. That Texon accepted the assignment of said lease and drilled the first well on said McCoy land in reliance upon such agreement.

12. That McElreath & Suggett Oil Corporation made the assignment and procured the first McCoy well to be drilled in reliance upon such agreement.

13. That plaintiffs had notice of such agreement prior to the time the Insurance Company agreed to convey the land in question to plaintiff Zula McCoy.

14. That Texon and McElreath & Suggett Oil Corporation, in reliance upon such agreement, paid into the registry of the District Court at San Antonio in the said foreclosure suit the rentals due under the terms of said lease.

15. That the rentals paid into the court were the current rentals for the year September 12, 1934, to September 12, 1935.

16. That plaintiffs as a part of the consideration for the conveyance of said land from the Insurance Company to Zula McCoy agreed to execute and deliver to Texon a valid oil and gas lease similar in terms and conditions to the original lease dated September 12, 1931, and for the unexpired term of said lease.

17. That the lease to Texon dated September 12, 1934, was executed and delivered by plaintiffs in compliance with such agreement.

18. That the Insurance Company, as a condition to the delivery of its deed to Zula McCoy, required plaintiffs to execute and deliver said lease to Texon.

19. That plaintiffs executed and delivered said lease to Texon in compliance with such condition.

20. That the Insurance Company delivered its deed to Zula McCoy in reliance upon the validity of said lease dated September 12, 1934.

21. That the Insurance Company would not have delivered its deed to Zula McCoy had it known that the validity of said lease might be questioned by plaintiffs.

22. That the $2500 cash consideration paid for the deed from the Insurance Company to Zula McCoy was not paid from the separate funds of Zula McCoy.

23. That Elmer McCoy requested that the deed from the Insurance Company be made to his wife in an effort to prevent the reinstatement of the oil and gas lease executed by him of date September 12, 1931.

The size of the record requires us to limit our discussion to propositions of law which control the disposition of this appeal. The cause of action asserted by Zula McCoy has a precedent in the case of Humble Oil & Refining Co. v. Kishi, Tex.Com.App., 276 S.W. 190. A necessary element of her cause of action is that the land upon which the well was drilled and the lease given by her husband, which she did not acknowledge, belonged to her separate estate. If the title to such land was in the community estate of Zula McCoy and her husband, and no homestead estate being involved, the lease given by the husband alone would effectually pass title to that portion of the minerals described in such lease. The lessees would have the right to enter upon said land and drill the well for the exploration of oil and gas. The jury found that the cash consideration of $2500 recited in the deed from the Insurance Company to Zula McCoy was not paid from her separate estate and that Elmer McCoy requested that the deed be made to Zula McCoy to prevent the reinstatement of the lease dated September 12, 1931. These findings, together with the fact that there was no agreement between the Insurance Company and the McCoys that the vendor should look only to Zula McCoy and her separate estate for the payment of the vendor's lien note executed by Zula McCoy and husband for the balance of the purchase price of the land, shows the land to belong to the community estate of the McCoys and not the separate estate of Zula McCoy. This being true, and no homestead estate being involved, the oil and gas lease executed by the husband passed title to the mineral estate described therein, even though Zula McCoy never appeared before a notary and acknowledged the same.

The appellant contends that the recitals in the deed from the Insurance Company to Zula McCoy are conclusive and show the land to belong to the separate estate of Zula McCoy. This suit being between Zula McCoy and Texon Royalty Company and its assignee, United Production Corporation, it is our opinion that the recitals in the deed were not conclusive upon the question of whether or not the title to the land was in the separate estate of Zula McCoy. Kahn v. Kahn, 94 Tex. 114, 58 S.W. 825; McCutchen v. Purinton, 84 Tex. 603, 604, 19 S.W. 710.

The recitals in the deed that the property was conveyed to Zula McCoy as her separate property were prima facie evidence that the $2500 was paid from Zula McCoy's separate funds, or that her husband intended the same to be a gift to her. However, such prima facie evidence could be rebutted by competent evidence tending to show that such payment was not intended as a gift to the wife, and that such payment was from the community estate or the separate estate of the husband. Proof was offered by the appellees, which seems to be without dispute, that at the time of the execution and delivery of the deed from the Insurance Company to Zula McCoy there was no agreement either with Zula McCoy or her husband and the Insurance Company, that the vendor's lien note would be paid out of the separate estate of Zula McCoy, hence that portion of the property is community property of the McCoys. Foster v. Christensen, Tex. Com.App., 67 S.W.2d 246; Solether. v. Trinity Fire Ins. Co., 124 Tex. 363, 78 S.W.2d 180; Gleich v. Bongio, 128 Tex. 606, 99 S.W.2d 881.

The lease executed and delivered by Elmer McCoy to Texon Royalty Company being a valid lease and running for

a primary term of two years, beginning September 12, 1934, was dependent upon the payment of rentals on September 12, 1935, in order to extend it. The record shows that an assignment was made of all rentals due or to become due upon any lease then on the land or any lease thereafter placed upon the land by the McCoys to the Insurance Company at or about the time of the sale of the land by the Insurance Company. $471.55 was paid to the agent of the Insurance Company on August 27, 1935; the remaining $480 was paid on September 23, 1935. These rental payments were by the agent of the Insurance Company credited upon the unpaid balance of the purchase money note, which was due by the McCoys November 1, 1935. The evidence shows that Zula McCoy and Elmer McCoy knew of this application, and when the November 1, 1935, payment became due, remitted an amount less than the rentals paid to the agent of the Insurance Company. This was done after and with full knowledge that a part of the rentals was paid after it became due. Under these facts the lessor is estopped to claim a previous termination of the lease. Mitchell et al. v. Simms et al., Tex. Com.App., 63 S.W.2d 371. The acceptance and retention of the rentals due September 12, 1935, had the legal effect of continuing the lease under its terms until September 12, 1936. Therefore, the entry by the Oil Company upon the land for the drilling of a well in the exploration of oil and gas during that period was not unlawful, hence Zula McCoy was not entitled to recover any damage from the company in virtue of said entry. The Kishi case, supra. In view of these holdings it is not necessary to discuss the effect of the jury findings that ·the drilling of the well in question did not give to the land the reputation of being nonproductive of oil and gas.

The appellant also complains that the trial court erred in directing a verdict in favor of the United Production Corporation, at the close of the evidence. The statement made by the appellant in presenting this assignment does not show sufficient facts from the record to authorize the court to submit any issues to the jury with regard to the liability of the United Production Corporation. The evidence shows that this Corporation had an assignment of the gas rights to 471 acres of land out of the tract of 951.55 acres of land described in the lease; that it was the policy of the Corporation to have one of its representatives present at the drilling of wells in fields in which the Corporation is actively operating; that the Corporation claimed all the rights granted to it under its assignment. These facts do not present sufficient evidence to show liability of the Corporation to Zula McCoy under the cause of action pleaded by her in this suit. This being true the trial court correctly directed a verdict in its favor.

It follows from what we have said that the judgment entered by the trial court is a correct one, and all complaints made thereto by the appellant are overruled and the judgment is affirmed.