M. J. BRANNON, Jr., et al., Appellants,

v.

GULF STATES ENERGY CORPORATION et al., Appellees.

No. 4982.

Court of Civil Appeals of Texas, Eastland.

March 10, 1977.

Rehearing Denied March 31, 1977.

W. Scott Clark and Daniel M. Tartaglia, Fort Worth, for appellants.

Levie Old, Brownwood, John E. Rapier, Dallas, for appellees.

WALTER, Justice.

M. J. Brannon, Jr., and Otis Thompson filed suit against Clara Odessa Martin and Gulf States Energy Corporation seeking to have an oil and gas lease dated November 20, 1973 from Clara Odessa Martin to Mary Linn Elliott, under which plaintiffs are claiming, to be in full force and effect. Patricia A. Elliott and Henry W. Elliott III intervened asserting a 1/16 overriding royalty under the lease. From a take nothing judgment, the plaintiffs and intervenors have appealed.

Clara Odessa Martin executed an oil and gas lease on 202 acres of land located in Coleman County to Mary Linn Elliott on November 20, 1973. Mrs. Elliott assigned this lease to Master Drillers, Inc. and retained a 1/16 overriding royalty interest which she assigned to intervenors.

The delay rental was not timely paid on the Martin-Elliott lease. Royal Russell, President of Gulf States, mailed Mrs. Martin a letter dated January 17, 1975 stating he was enclosing a check dated January 17, 1975 in the amount of $202.00 for "lease rental" on the lease of her 202 acres of land. On the face of the check were the words "lease rental." On July 9, 1975, Mrs. Martin executed a lease on the same 202 acres to Gulf States.

The basic issue between the parties is whether the $202.00 payment from Gulf States is payment for the delay rental on the Martin-Elliott lease or payment of the bonus for the Martin-Gulf States lease.

The jury answered the issues as follows: (1) the Gulf States' check dated January 17, 1975 payable to Mrs. Martin was not paid

by Gulf States as delay rental on the Martin-Elliott lease; (2) not answered; (3) Gulf States paid $202.00 as consideration for the Martin-Gulf States lease; (4) Mrs. Martin accepted payment as consideration for the Martin-Gulf States lease; (5) Gulf States drilled and made improvements on the 202 acres believing, in good faith, it had a valid right to drill; and (6) the value of the improvements made by Gulf States on the 202 acres was $200,000.

Appellants contend the evidence establishes conclusively the payment by Gulf States of $202.00 on January 17, 1975 was payment for the rental on the November 20, 1973 Martin-Elliott lease.

Mrs. Clara Odessa Martin testified substantially as follows:

I am a widow and I am 76 years old. I reside on Route # 1, Talpa in Coleman County. I understand there is a controversy about who owns the oil and gas lease on 202 acres of my land here in Coleman County. I leased this land to Mary Linn Elliott on November 20, 1973. I did not receive the delay rental provided for in the lease on or before November 20, 1974. I wrote Mrs. Elliott and informed her I did not receive the delay rental and asked her about my abstracts. Thereafter, I received a check from Gulf States for $202.00, "but it wasn't rental. It wasn't what I call rental." It was for a new lease. Mr. Mabry, Gulf States' geologist, came to see me a few days before Christmas and we came to an agreement on a lease. I was ready to go on a Christmas trip and I asked him if we could wait until after Christmas "to write this up." "So we made our agreement at that time." The bonus for the lease was $202.00 and the drilling of the well. I wasn't looking for a lot of money. I wanted a well drilled. My mother and father had leased the place years ago, but there had never been a well drilled on the place. On July 9, 1975, I executed the lease to Gulf States.

I know the plaintiff Otis Thompson and he never did talk to me about a tax sale.

I never had a conversation with Mr. Thompson wherein I told him the rentals were paid late on the Elliott lease, the first lease. I never discussed that with Mr. Thompson and the second time he came out, he told me he was interested in my property and I told him it was already leased and he didn't say anything about rentals. I received a letter on or about January 17, 1975 from Royal Russell of Gulf States and a check from him for $202.00 and this was the amount of money we agreed on for the new lease, because this other lease terminated a year after I first leased.

Three gentlemen came to my home on July 29, 1975 and one of them wrote out a statement and I signed it. The statement is as follows:

"Coleman, Texas
July 29, 1975

I, Clara Odessa Martin, remember writing Mary Lynn Elliott about last November and telling her I had not received the rentals on my lease to her dated Nov. 20, 1973 covering 202 acres of my land.

She wrote back that they would be paid, and they were paid a few days later. They were late, but I accepted the payment and deposited the money in the Coleman Bank.

I later told Mr. Otis Thompson that I had been paid and the lease of Nov. 73 was still valid.

s/ Clara Odessa Martin"

I was nervous when I made this statement because they suggested to me that if I didn't I would be subpoenaed. When he said something about a subpoena, it scared me to death.

On or about the 9th day of July, 1975, I made an affidavit as follows:

"I, CLARA ODESSA MARTIN, Lessor of that certain Oil, Gas and Mineral Lease, dated and executed November 20, 1973, between CLARA ODESSA MARTIN, a widow, Lessor and MARY LINN ELLIOTT, Lessee covering the following lands, to-wit:

Tract 1: The NE/4 of Section 62, C. D.
Cleveland Survey, Abstract 1156
and containing 161.5 acres, more
or less and;

Tract 2: The south fourty and one-half
(40 1/2) acres, of the SW/4 of
Section 27, G. H. and H. R. R.
Survey, Block 1, all of which are
located in Coleman County, Texas;

State that pursuant to the terms and conditions of said Lease, no delay rentals were paid to me on or before November 20, 1974, nor were operations begun by said Lessee for the drilling or mining on said lands on or before November 20, 1974, nor were said lands pooled as set out in said Lease on or before November 20, 1974.

s/ Clara Odessa Martin
CLARA ODESSA MAR-
TIN"

This affidavit has been recorded in the deed records of Coleman County.

■ The testimony of Mrs. Martin and other facts and circumstances in evidence constituted some evidence of probative force and support the jury's answers to Special Issues # 1. *Martinez v. Delta Brands*, 515 S.W.2d 263 (Tex.1974).

■ Appellants' point the Court erred in granting appellees' motion in limine is without merit. It is the subsequent exclusion of the testimony which may or may not constitute a reversible error. In *Biard Oil Company v. St. Louis Southwestern Railway Company*, 522 S.W.2d 588 (Tex.Civ.App.—Tyler 1975, no writ), the court said:

"It is never error for a trial court to overrule a motion in limine which seeks to preclude the introduction of evidence. The party opposing the admission of certain evidence still has the burden of interposing a specific objection at the time the evidence is tendered and appeal from its admission over his objection . . ."

■ Appellants contend the court erred in sustaining appellees' objection to questions asked Royal Russell about the identity of investors who put up the money for drilling wells on the Martin property, the amount of their investment and the interest granted to them for their investment. They also contend this testimony was relevant to the issue of whether or not the drilling of the three wells was reasonable and prudent.

Rule 418, T.R.C.P., provides in part:

". . . If complaint is made of the improper admission or rejection of evidence, the full substance of such evidence so admitted or rejected shall be set out with reference to the pages of the record where the same may be found . . ."

This provision of the rule has not been complied with by appellants. Appellants have cited no authorities in support of this point. Points that are not briefed are waived. *St. Paul Mercury Insurance Company v. Sugarland Industries, Inc.*, 406 S.W.2d 778 (Tex.Civ.App.—Eastland 1966, writ ref. n. r. e.).

■ We find no merit in appellants' contention the court erred in overruling their motion for summary judgment. In *Morrow-Thomas, Inc. v. Harris*, 466 S.W.2d 323 (Tex.Civ.App.—Eastland 1971, no writ), we held:

"Appellant's first and second points, that the trial court erred in overruling its motion for summary judgment are overruled. This is an appeal from a 'take nothing' judgment tried on its merits by a jury. Whether the trial court did err in overruling appellant's motion for summary judgment before the case was tried on the merits is not a matter for consideration on appeal. *Dyche v. Simmons*, 264 S.W.2d 208 (Tex.Civ.App., writ ref., n. r. e.); *Stewart v. Lomax*, 395 S.W.2d 82 (Tex.Civ.App., writ ref., n. r. e.)."

■ Appellants contend the court erred in admitting the testimony of Royal Russell of Gulf States to the effect the $202.00 paid by Gulf States to Mrs. Martin was bonus for a new lease because such testimony violates the parol evidence rule.

Appellants have not complied with the provision of Rule 418, T.R.C.P., in that they have made no reference to the pages of the record where the evidence may be found.

Mr. Russell testified substantially as follows:

During December of 1974, I was acquainted with August Powe. He is a rancher and farmer at Valera and lives at Mrs. Martin's place. During that time, I had a conversation with Mr. Powe about the Martin-Elliott lease. I told him that if he would talk to Mrs. Martin and get me a new lease, I would drill her a well and pay her $202.00. Mr. Powe was going to talk to Mrs. Martin, and my geologist, Frank Mabry, was going to talk to Mrs. Martin about the lease. If this arrangement was agreeable with her, I was going to send her the $202.00 and drill her a well. About January 17, I mailed Mrs. Martin a check for $202.00.

He was then asked the following question:

"Now Mr. Russell, tell the jury whether that $202.00 was consideration for the new lease with the agreement that you had or whether it was payment of the delay rentals on the lease which had expired, which was the original lease between Martin and Mary Elliott?"

Appellants made the following objection:

"Your Honor, I'll object to that question. That question calls for an answer on the part of the witness that's parol evidence. The best evidence of what that payment was for is in the written letter by Mr. Russell."

The objection was overruled and Mr. Russell answered, "The $202.00 was for a new lease, and I agreed to drill her a well."

Before Mr. Russell testified, the plaintiffs and intervenors called Mrs. Martin under the adverse party rule and she testified without objection that she received the $202.00 check from Gulf States and it was not a rental payment but was for a new lease. She testified the bonus for the new well. Mrs. Martin was shown Plaintiffs' Exhibit 1, which is the letter from Gulf States to Mrs. Martin of January 17, 1975, enclosing the $202.00 check and the check of $202.00. She testified she received these instruments and stated that $202.00 was the amount of money she agreed on for the new lease "because this other lease terminated a year after I had first leased."

Appellants laid the predicate for the introduction of the check and letter by Mrs. Martin. Appellants introduced these exhibits in evidence and established by Mrs. Martin the $202.00 check was consideration for the new lease to Gulf States. When appellees offered the same evidence from Russell, the appellants contended it violated the parol evidence rule.

23 Tex.Jur.2d, Evidence § 376 is as follows:

"§ 376. In general.

The extrinsic evidence rule applies only to writings that actually evidence the contract or agreement of the parties. In other words, for the rule against admitting extrinsic evidence of the terms of written instruments to be applicable, the instrument must have been executed by the parties as a means of evidencing the creation, modification, termination, or securing of a particular right or obligation. Accordingly, the rule is inapplicable to accounts, letters written in the ordinary course of correspondence, memorandums, and other writings that were not written primarily with an intent to bind the parties or to evidence rights and obligations existing between them . . ."

"The parol evidence rule does not apply to writing which do not purport to be contractual agreements, such as letters, telegrams, book entries or accounts, and other miscellaneous writings of an informal nature constituting mere memoranda of the agreements themselves. Similarly, the parol evidence rule is not applicable to written instruments signed and delivered in the execution or carrying out of a contract . . ." 30 Am.Jur.2d, Evidence § 1024 (1967)

It is apparent the letter was written in the ordinary course of correspondence and was not written primarily with an intent to bind the parties or to evidence rights and obligations existing between them. This letter did not constitute a contract between the parties relating to the Martin-Elliott lease or the Martin-Gulf States lease, there-

fore, the extrinsic evidence rule is not applicable. Appellants contend the letter constitutes a contract between Gulf States and Mrs. Martin and the parol evidence rule applies and Mr. Russell cannot testify the $202.00 check was consideration for the new lease.

If this be true, appellants are strangers and cannot invoke the parol evidence rule. See *Vander Stucken v. Willoughby*, 242 S.W. 478 (Tex.Civ.App.—Austin 1922, no writ).

We have considered the entire record and hold the findings of the jury to issues one and three are not against the weight and the preponderance of the evidence. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

■ Appellants discuss their estoppel contentions under their sixth point of error which is as follows:

### "APPELLANTS' SIXTH POINT OF ERROR (RESTATED)

The trial court erred in overruling Appellants' motion for summary judgment, motion for instructed verdict, and motion for new trial wherein it was asserted Gulf States Energy Corporation was estopped from testifying that the $202.00 check forwarded to Clara Odessa Martin on January 17, 1975, was bonus for a new lease, inasmuch as the letter and the check labeled it 'lease rentals', and President Royal Russell of Gulf States Energy Corporation sent a copy of the letter to Mary Linn Elliott, owner of the overriding royalty, who relied on such representations to her detriment. Estoppel is buttressed by Gulf States' failure to record its alleged oral lease for six months, during a period when (1) production offset the subject tract and (2) the leasehold on the subject tract was advertised for public sale and Gulf States bid on the leasehold along with these Appellants. Further, Co-Defendant Martin is estopped from attacking validity of Appellants' lease by her acceptance and deposit of the late rental check and by her representation to Otis Thompson that she had accepted late rentals and the 1973 lease is valid."

In *Hudspeth v. Hudspeth*, 206 S.W.2d 863 (Tex.Civ.App.—Amarillo 1947, no writ), the court said:

"A point or assignment of error is multifarious when it embraces more than one specific ground of error or when it attempts to attack several distinct and alleged errors or rulings of the trial court. When it fails to point out definitely some alleged specific error or ruling of the court or fails to present some concrete question raised in the case it is too general and too indefinite to be considered provided it does not present fundamental error . . . ."

We consider this point broad, general and multifarious.

Appellants objected to the charge by first asserting issues numbers 3 and 4 were inferential rebuttal issues and not necessary. Appellants stated they were suggesting a different issue for issue number 5. The court said, "All right. Let the record show that no requested issues have been submitted to the Court at this point." They also dictated some requested issues which they contend supported their contentions of estoppel.

In *Garza v. San Antonio Light*, 531 S.W.2d 926 (Tex.Civ.App.—Corpus Christi 1975, writ ref. n. r. e.), the court said:

"Appellants contend in their second point that it was error for the trial court to refuse to define the term 'public hatred'. The request and the suggested form of the definition was made by the appellants as they dictated their objections to the charge to the court reporter. In their third point the appellants contend that it was error to refuse to submit a requested special issue. That request and the suggested form of the special issue were also made as the appellants dictated their objections to the court's charge. These points must be overruled.

The objections to the court's charge and the submission of the definition and special issues were made together. The failure to submit definitions or special

issues may not be considered as error by an appellate court *unless they have been requested separate and apart from the objections made to the court's charge.* Vega v. Royal Crown Bottling Company, 526 S.W.2d 729, 734 (Tex.Civ.App.—Corpus Christi 1975, no writ); *Samford v. Duff*, 483 S.W.2d 517, 527 (Tex.Civ.App. —Corpus Christi 1972, writ ref'd n. r. e.); Rule 273, T.R.C.P. Appellants' second and third points are overruled." (Emphasis added)

█ Appellants requested issues on estoppel cannot be considered because they were not properly presented to the trial court as provided for by Rule 273, T.R.C.P. Appellants did not secure a finding on their defense of estoppel and the record does not establish estoppel as a matter of law. The contention they are entitled to recover on their affirmative defense of estoppel cannot be sustained.

We have considered all of appellants' points and find no merit in them. They are overruled.

The judgment is affirmed.