M. J. BRANNON, et al., Petitioners,

v.

GULF STATES ENERGY CORPORA-
TION, et al., Respondents.

No. B–6759.

Supreme Court of Texas.

Dec. 30, 1977.

Rehearing Denied March 15, 1978.

Clark & Tartaglia, W. Scott Clark, Fort Worth, for petitioner.

Levi Old and Willoughby, Brown, Longenecker, Beecham, Koons & Rapier, John E. Rapier, Dallas, for respondents.

DANIEL, Justice.

The question in this case is whether an oil and gas lease terminated for nonpayment of delay rentals where there was a late payment and acceptance by the lessor of a check designated as "lease rental." More specifically, the issue is whether parol evidence was admissible to vary the written designation of the late payment from a "rental" to a bonus for a new lease.

Petitioners, M. J. Brannon, Jr., Otis Thompson, Patricia A. Elliott, and Henry W. Elliott III claim under a lease dated November 20, 1973, from Clara Odessa Martin covering 202 acres in Coleman County. The first delay rental of $202.00 due November 20, 1974, was not timely paid. However, Petitioners allege that on January 17, 1975, Respondent, Gulf States Energy Corporation, while holding an interest in said lease, made a late written tender of the rental to the lessor by letter and check. Both of these designated the payment as "lease rental," and the check was accepted by the lessor. Respondent, Gulf States, countered with the allegation that the check was in fact a bonus paid in advance for a new lease which Mrs. Martin executed and delivered to Gulf States on July 9, 1975. The trial court, over the objection of Petitioners, permitted parol evidence at variance with the "rental" letter and check. Upon jury findings favorable to Gulf States, a take nothing judgment was entered against the Petitioner-plaintiffs. The

Court of Civil Appeals affirmed. 548 S.W.2d 790. We reverse and remand for further proceedings in accordance with this opinion.

On November 20, 1973, Mrs. Clara Odessa Martin executed an oil and gas lease to Mary Linn Elliott covering the 202 acres mentioned above. It was a five year lease providing for termination at the end of each anniversary date unless an annual rental of $202.00 was paid or the lease was otherwise perpetuated by drilling operations or production. In the meantime, Mrs. Elliott had also acquired an adjoining 1900 acre lease known as the "Evans lease." Early in 1974, Mrs. Elliott negotiated the terms of a sale of the Martin and Evans leases to Royal Russell, sole owner and stockholder of Gulf States, whereby she would assign the leases for a cash consideration and retain a ¹⁄₁₆th overriding royalty. Prior to Mrs. Elliott's execution of the assignments, Royal Russell negotiated an agreement with Master Drillers, Inc., on February 18, 1974. It referred to the separate tracts as one lease and recited that Master was interested in purchasing said lease and "acting in a capacity of 'Warehousing' said lease for and on behalf" of Gulf States, and that the two companies were interested in jointly developing same. The agreement provided, among other things, that (1) Gulf States "agrees to allow Master to purchase" said lease and to give up any option then held by Gulf States to purchase same; (2) that Master would purchase the lease for $25,000, and give Gulf States an option to purchase no less than one half of the usable oil locations on said lease for a total accumulated price of one-half of Master's purchase price, with lease assignment to Gulf States to be a net 77%; and (3) that Gulf States would be allowed to make its selection of drilling locations prior to any other party, including Master.

At Russell's request, on February 20, 1974, Mrs. Elliott executed assignments on the Martin and Evans leases to Master Drillers, Inc., "effective as of February 18, 1974." The ¹⁄₁₆th overriding royalty reserved by Mrs. Elliott in the Martin lease

assignment was conveyed by her on March 26, 1975, to her children, Patricia Elliott and Henry Elliott III, who are two of the Petitioners here.

Russell testified that he had made selections for Gulf States under the agreement with Master, had drilled wells on the Evans portion of the acreage, and that during 1974 Gulf States had paid Master the $12,500 which entitled Gulf States to one-half of all the acreage assigned to it by Mrs. Elliott. The agreement between Gulf States and Master was not recorded and no assignment was made from Master to Gulf States on its interest in the Martin 202 acre lease. On October 22, 1974, the Internal Revenue Service seized the Martin and Evans leases along with other property of Master Drillers to enforce a lien for taxes.

Mrs. Martin's annual lease rental was not paid on November 20, 1974. She so advised Mrs. Elliott after Christmas in December of 1974. Because of this jeopardy to her overriding royalty, Mrs. Elliott testified that she called Royal Russell and asked him to pay the rentals. Russell remembered a call from Mrs. Elliott about the Evans lease but denied any mention of the Martin lease. In any event, by letter dated January 17, 1975, addressed to Mrs. Martin, with a copy mailed to Mrs. Elliott, Royal Russell transmitted a Gulf States check payable to Clara Odessa Martin in the sum of $202.00, on which was typed "Lease Rental." The letter read in part as follows:

"Dear Mrs. Martin:

Enclosed please find check # 6240 in the amount of $202.00 which is for lease rental on the following described lease:
[Description] [1]
Thank you. Sincerely,
GULF STATES ENERGY CORPORATION
(s) Royal Russell
President
RR/mdm
Enclosure

cc: Mrs. Mary Elliott"

The check was received, accepted, endorsed, and deposited in her bank account by Mrs. Martin. On January 24, 1975, Mrs. Elliott wrote Mrs. Martin, "I trust you have received your rental money, since Mr. Russell advised me that he was mailing the check."

On May 27, 1975, at a public sealed-bid sale by the Internal Revenue Service, petitioner Thompson bought all rights and interests of Master Drillers in the Martin and Evans leases. Royal Russell attended the sale and submitted a lower bid on behalf of Gulf States. Thompson conveyed one-half of his purchase to petitioner Brannon by quitclaim deed dated June 9, 1975. Subsequent delay rentals, due November 20, 1975, were tendered by them to Mrs. Martin but were declined by her.

On July 9, 1975, Mrs. Martin executed a new ten-year lease on the 202 acres to Gulf States. It made a first well location on the tract in late July of 1975 and drilled three wells in spite of the recorded conveyances to Thompson and Brannon and written notices from their attorneys protesting any operations on the property by Gulf States. This suit was filed by Petitioners Brannon and Thompson on September 17, 1975, seeking a declaratory judgment that the lease of November 20, 1973, from Clara Odessa Martin to Mary Linn Elliott was in full force and effect; that the subsequent lease from Mrs. Martin to Gulf States be declared void; and that Gulf States be ordered to vacate the premises. Petitioners Patricia and Henry Elliott intervened, seeking similar relief and an accounting and payment for 1/16th of the oil, gas and other minerals produced from the 202 acres. Gulf States filed a general denial, a special claim of development of the tract under a superior lease, and an alternative claim for development expenditures in excess of $210,000.

Gulf States' claim to a superior title rests upon parol testimony of Mrs. Martin and

---

1. The description lists Tract No. 1 of 161.5 acres and Tract No. 2 of 40.5 acres in substantially the same form as in Mrs. Martin's lease to Mrs. Elliott and in exactly the same form and wording as the 202 acres was described in the assignment from Mrs. Elliott to Master Drillers.

Royal Russell that the $202.00 "lease rental" paid by Gulf States to Mrs. Martin on January 17, 1975, was not in fact a rental due under the Martin-Elliott lease of 1973, but a bonus for a new lease from Mrs. Martin to Gulf States executed by Mrs. Martin on July 9, 1975. In support of this direct contradiction of the written terms of the rental letter and check, there was other parol evidence to the effect that shortly before Christmas of 1974, Mrs. Martin orally agreed to make a new lease to Gulf States in consideration of $202.00 and a promise to drill a well. This evidence is summarized in narrative form by the Court of Civil Appeals.[2]

Petitioner-plaintiffs have contended throughout this litigation that the parol evidence rule rendered inadmissible the testimony of Mr. Russell and Mrs. Martin contradicting the written Gulf States rental letter and the $202.00 rental check of January 17, 1975, which was accepted and endorsed by Mrs. Martin. If they are correct, then admission of such parol evidence was erroneous and there was no probative evidence warranting the submission of special issues 1 through 4. The Court of Civil Appeals held that the parol evidence rule did not apply because the letter and check were not contractual, and even if so, that the rule could not be invoked by a stranger to the transaction.

### Contractual Nature of the Letter and Check

■ That a written instrument cannot be varied by parol evidence is a rule of substantive law. *Hubacek v. Ennis State Bank*, 159 Tex. 166, 317 S.W.2d 30 (1958); *South Texas Implement & Machine Co. v. Anahuac Canal Co.*, 280 S.W. 521, 523 (Tex. Comm.App.1926, judgmt adopted). Yet it is true that the rule applies only to contractual or jural writings evidencing the cre-

ation, modification, termination or securing of a particular right or obligation. 9 J. Wigmore, A Treatise on Evidence §§ 2400–01 (3d ed. 1940); 2 C. McCormick and. R. Ray, Texas Law of Evidence § 1612 (1956); 4 S. Williston, A Treatise on the Law of Contracts § 631 (3d ed. 1961).

■ We consider the letter and the check relating to "lease rentals" as contractual in nature because late payment and acceptance of annual rentals provided for in an oil and gas lease has the effect of reviving the lease as though it had never terminated. *Mitchell v. Simms*, 63 S.W.2d 371 (Tex. Comm.App.1933, holding approved); *McCoy v. Texon Royalty Co.*, 124 S.W.2d 877 (Tex. Civ.App.1939, writ dism'd, judgmt correct). See also *Humble Oil and Refining Co. v. Harrison*, 146 Tex. 216, 205 S.W.2d 355 (1947); *Myers v. Crenshaw*, 116 S.W.2d 1125 (Tex.Civ.App.1938), affm'd 134 Tex. 500, 137 S.W.2d 7 (1940).

In *Simms*, a rental due on June 1, 1929, was paid in December, over six months late. The payment was accepted by the lessor, and it was held that such acceptance estopped the lessor from "claiming that the lease had terminated before payment was made." The court said: "The practical result . . . is the same as if Simms and wife [the lessors] had by binding agreement in December, revived the lease." By the same token, the written tender of lease rentals by Gulf States to Mrs. Martin two months late and her acceptance, endorsement, and deposit of the check to her account had the same effect as a binding agreement to revive the only existing lease on which any "rentals" were due. The transaction was contractual in nature. Furthermore, there is no ambiguity in the term "lease rental." One pays lease rental for the purpose of delaying drilling opera-

2. Upon this evidence the jury made the following findings: (1) the Gulf States check dated January 17, 1975, payable to Mrs. Martin was not paid by Gulf States as delay rental on the Martin-Elliott lease dated November 20, 1973; (2) not answered; (3) Gulf States paid $202.00 to Mrs. Martin on January 17, 1975, as consideration for the Martin-Gulf States lease dated July 9, 1975; (4) Mrs. Martin accepted payment of the $202.00 as consideration for the Martin-Gulf States lease; (5) Gulf States drilled and made improvements on the 202 acres believing, in good faith, it had a valid right to drill such well or wells; and (6) the value of the improvements made by Gulf States on the 202 acres was $200,000.

tions, rather than consideration for a new lease. *Griffith v. Taylor*, 156 Tex. 1, 291 S.W.2d 673, 676 (1956). The parties were familiar with the term. Being evidenced by unambiguous written documents clearly designating the payment as rentals, extrinsic parol evidence was not admissible to prove that the "lease rental" was a bonus consideration for an unexecuted lease rather than rental due under the executed Martin-Elliott lease of November 20, 1973.

### Strangers to the Lease?

Gulf States asserts in the alternative that the parol evidence rule does not apply to strangers to a transaction and could not be invoked in this case because Gulf States was a stranger to the Martin-Elliott lease. As such, it argues that any payment by it of the late rental could not bind either the lessor or the lessee or inure to the benefit of Petitioners. We shall not discuss the authorities on this point, because it is our opinion that Gulf States was not a stranger to the Martin-Elliott lease when it sent the rental letter and check to Mrs. Martin on January 17, 1975.[3]

On the contrary, Gulf States, through its President and sole owner, Royal Russell, had arranged the purchase of the Martin and Evans leases from Mrs. Elliott. Prior to their assignment from Mrs. Elliott, Gulf States entered the written agreement of February 18, 1974, with Master Drillers whereby the latter would pay the cash consideration of $25,000 to her, receiving the assignments in its name and "acting in a capacity of 'Warehousing' said lease for and in behalf of GSE [Gulf States] . . . ." By the agreement Gulf States agreed "to allow Master to purchase" the lease (referring to both the Martin and Evans tracts as one lease), with Gulf States having the option to purchase no less than one-half of the

usable oil and gas locations thereon for one-half of the purchase price paid to Mrs. Elliott by Master. Russell testified that he made certain selections and had paid Master Drillers the $12,500, which entitled Gulf States to one-half of the lease, before the end of 1974. Gulf States claimed this interest in the Martin-Elliott lease before the IRS sale and as late as December, 1974, when Russell showed the IRS the February 18, 1974, agreement with Master Drillers. Gulf States still claimed an interest in the lease when it bid at the IRS sale of Master Drillers' interest on May 27, 1975. In answer to a question on oral argument in this Court, Gulf States' counsel stated that the company would still claim to own an interest in the Martin-Elliott lease if this Court decided that the lease is in effect.

■ Under the "warehousing" agreement of February 18, 1974, between Gulf States and Master Drillers, the latter was holding in its name one-half of the unassigned Martin and Evans leases for Gulf States when Gulf States paid "lease rentals" to Mrs. Martin on January 17, 1975. If not an express trust, the written agreement of February 18, 1974, at least created a constructive trust under which Gulf States could have enforced its right to assignments due under the contract. *Courseview, Inc. v. Phillips Petroleum Co.*, 158 Tex. 397, 312 S.W.2d 197 (1957). The rights of Gulf States, held in trust for it by Master Drillers, were not extinguished or transferred when the IRS sold Master Drillers' interest in the lease to Thompson by quitclaim deed on May 27, 1975. The quitclaim purported to cover only "the right, title and interest of the said Master Drillers, Inc.," in and to the leases, and its legal effect was to convey only such interest as the delinquent taxpayer [Master] owned at the time of the lien and quitclaim. 26 U.S.C. § 6339(b)(2);

---

3. For cases containing statements to the effect that the rule is inapplicable to strangers to a contract see *Vander Stucken v. Willoughby*, 242 S.W. 478 (Tex.Civ.App.1922, no writ); *United States v. Menier Hardware No. 1, Inc.*, 219 F.Supp. 448, 459–460 (W.D.Tex.1963); and *White v. Hunt*, 193 Miss. 742, 10 So.2d 539 (1942). For the contrary view which is more applicable to the facts of this case, see *Cannon v. Pearson*, 383 S.W.2d 565, 570 (Tex.1964); *Kingsbery v. Phillips Petroleum Co.*, 315 S.W.2d 561, 571 (Tex.Civ.App.1958, writ ref'd n. r. e.); 2 C. McCormick and R. Ray, *Texas Law of Evidence* § 1621 at 475–76 (1956); and 9 J. Wigmore, *supra*, § 2446 at 150.

*Mansfield v. Excelsior Refining Co.*, 135 U.S. 326, 10 S.Ct. 825, 34 L.Ed. 162 (1889); *Crow v. Wyoming Timber Products Co.*, 424 F.2d 93 (10th Cir. 1970). See also *Winningham v. Dyo*, 48 S.W.2d 600 (Tex.Comm.App. 1932, judgmt adopted); *Gulf Production Co. v. State*, 231 S.W. 124 (Tex.Civ.App.1921, writ ref'd); 23 Am.Jur.2d § 292.

Under the circumstances, Thompson and his assignee by quitclaim Brannon, were not innocent purchasers for value. They received only the title of Master Drillers, which was subject to the interest of Gulf States under its written but unrecorded agreement with Master Drillers. Thus, Gulf States was not a stranger to the Martin-Elliott lease when it sent the "lease rental" to Mrs. Martin. Unless it has since lost its interest by waiver, election, renouncement or some other action (a question which we do not now decide), Gulf States is still entitled to the one-half interest it had acquired in the Martin-Elliott lease under its agreement with Master Drillers dated February 18, 1974.

*Conclusions and Instructions on Remand*

Since the written lease rental payment and acceptance were contractual and unambiguous, it was error to allow the terms and effect thereof to be varied by parol evidence. We hold that the Martin-Elliott lease of November 20, 1973, is in full force and effect and that it is superior to the Martin-Gulf Coast lease of July 9, 1975.

As to the 1/16th overriding royalty retained by Mrs. Mary Linn Elliott in her assignment to Master Drillers on February 20, 1974, we hold that it is in effect and is owned by Patricia A. Elliott and Henry W. Elliott III. On remand, the trial court should enter judgment in their favor for title to such royalty, for an accounting by Gulf States, and for recovery of 1/16th of all of the oil, gas and other minerals produced, saved and marketed by Gulf States from the Martin 202 acres, in accordance with the terms of the assignment referred to above.

As to ownership of the Martin-Elliott oil and gas lease, we hold that it is vested in M. J. Brannon, Jr., and Otis Thompson, subject to (1) the 1/16th overriding royalty of Patricia A. Elliott and Henry W. Elliott III, (2) the right of Gulf States to reimbursement of one-half of the lease rental paid on January 17, 1975, (3) the rights, if any, of Gulf States under its agreement of February 18, 1974, with Master Drillers, and (4) an offset in favor of Gulf States for the amount of Brannon and Thompson's share of any reasonable and actual expenses found to have been made by Gulf States in drilling, operating and producing the wells on the Martin-Elliott lease when an accounting is made between the parties for the production of oil, gas and other minerals therefrom.

■ If, upon remand, Gulf States asserts no interest in the Martin-Elliott lease or it is found by the court to have no interest therein, then Gulf States will be entitled to an offset of the actual amount of its reasonable expenditures in drilling and developing the leasehold estate if Gulf States is again found to have drilled and developed the 202 acre lease in good faith belief in the superiority of its lease of July 9, 1975. Petitioners insist that as a matter of law Gulf States cannot be a trespasser in good faith because of its own revival and knowledge of the Martin-Elliott lease. We disagree. Under certain circumstances, one can be completely mistaken in his claim of superior title and yet be a trespasser in good faith. The question is usually one of fact. *Gulf Production Co. v. Spear*, 125 Tex. 530, 84 S.W.2d 452, 457 (1935); *McMurrey Corp. v. Shell Oil Co.*, 173 S.W.2d 354 (Tex.Civ.App. 1943, writ ref'd); *Gulf Production Co. v. Baton*, 108 S.W.2d 960 (Tex.Civ.App.1937, writ ref'd).

■ Although Petitioners' adverse claim had been known and asserted by letters, no suit was filed against Gulf States prior to its entry upon the leasehold and spudding its first two wells. It consulted legal counsel before incurring expenses on the lease. On retrial, substantially the same evidence as to belief in the superiority of its title would support a jury finding that Gulf States conducted its operations and made

its expenditures in good faith. However, the amount of the expenditures should not be a mere estimate as on the present trial. Rather, it should be based on a detailed accounting of the actual expenditures. See the above cited cases and *Texas Company v. State*, 154 Tex. 494, 281 S.W.2d 83, 93 (1955). Under the applicable decisions, the amount of such expenditures may be recouped by Gulf States only by way of an offset if they are less than the amount received by Gulf States and owed to Brannon and Thompson for production from the 202 acres.

As indicated, our holding concerning the validity and effectiveness of the Martin-Elliott lease, as prayed for by Brannon and Thompson, leaves several equitable issues between them and Gulf States which cannot be determined on the record now before us. We are not informed whether the wells on the Martin 202 acres have produced more income than the cost of drilling and operating them. No accounting has been sought by Brannon and Thompson from Gulf States, and the latter has made no alternative plea for an interest in the Martin-Elliott lease. Thus, it is necessary that we reverse and remand the case to the trial court for further proceedings to determine those equities between Brannon-Thompson and Gulf States which are incidental to our holding that the Martin-Elliott lease is in effect. Upon remand, the trial court is instructed to enter a judgment in accordance with this opinion after hearing and determining the incidental issues referred to above between Brannon-Thompson and Gulf States. Their pleadings should be amended in order that these incidental issues and other phases of the controversy may be resolved in the final judgment of the trial court.

Accordingly, the judgments of the lower courts are reversed and the case is remanded to the trial court for further proceedings in accordance with this opinion.

## ON MOTION FOR REHEARING

Both petitioner, Brannon, and respondent, Gulf States Energy Corporation, have filed motions for rehearing. Brannon asks that we delete from our opinion any inference of a possibility that Gulf States may now own an interest in the 1973 Martin 202 acre lease, which was conveyed by quitclaim deed from the Internal Revenue Service to Brannon, et al. Brannon states that this issue has been litigated and determined against Gulf States in another lawsuit in Coleman County. The record in this case does not reveal any such prior litigation, and it has been referred to for the first time in Brannon's motion for rehearing. Brannon further argues that by judicial admissions, estoppel, and election of an inconsistent remedy, Gulf States has waived any claim to an interest in the 1973 Martin lease. Neither of these issues has been fully developed or briefed in the present case. Therefore, such issues should be considered at the trial upon remand.

Brannon also argues that none of the evidence on good faith development by Gulf States is admissible in view of our holding that such evidence could not vary the written instruments evidencing payment of rentals by Gulf States on the 1973 Martin lease. While parol evidence was not admissible to vary the written contract, it is admissible and should be heard on retrial for the sole purpose of determining whether Gulf States believed in good faith in the superiority of its 1975 lease when it drilled the three wells on the Martin lease. Brannon contends that Gulf States should be held as a matter of law not to have been in good faith in drilling the third well because it was commenced after this suit was filed. This particular argument is overruled because Gulf States entered upon the Martin tract and began its drilling program prior to the filing of this case. The question of Gulf States' good faith is still one of fact to be decided upon remand.

Brannon further contends in the alternative that each of the three wells should be treated separately in determining the recoupment of costs to which Gulf States would be entitled if held again upon retrial to have been acting in good faith. However, this argument is not briefed; no cases

are cited on the point; and like the other issues referred to above, it should be developed, briefed and decided at the new trial.

Gulf States' motion complains of our holding that it was not a stranger to the 1973 Martin lease when it paid the rentals due thereon. It argues that no right or title ever passed to it by reason of the contract with Brannon dated February 18, 1974, or by a constructive trust resulting therefrom. We have disposed of this argument in our original opinion contrary to the views argued by Gulf States.

Accordingly, both motions for rehearing are overruled.